## Richmond

MACK WILSON FIERST v. COMMONWEALTH OF VIRGINIA.

April 27, 1970.

Record Nos. 7194 and 7195.

Present, All the Justices.

*Jack B. Stevens* (*T. Brooke Howard; Howard, Stevens, Wester-man, Lynch and Howard,* on brief), for plaintiff in error in Record Nos. 7194 and 7195.

*William T. Lehner, Special Counsel* (*Robert Y. Button, Attorney General; M. Harris Parker, Assistant Attorney General,* on brief), for defendant in error in Record Nos. 7194 and 7195.

COCHRAN, J., delivered the opinion of the court.

Appellant, Mack Wilson Fierst, having waived a jury, was tried by the court and found guilty of statutory burglary and unlawful possession of narcotics in excess of 25 grains. He was sentenced to confinement in the State Penitentiary for ten years on the statutory burglary conviction and for twenty years and payment of a fine of $1000 on the narcotics conviction, the sentences to run consecutively. We granted writs of error to review both judgments of conviction.

The numerous assignments of error present these two main contentions: (1) the convictions are based upon evidence obtained through illegal search and seizure, and (2) the admissible evidence is insufficient as a matter of law to sustain either conviction.

On October 19, 1967, at approximately 2:30 A.M., Officer William A. Newell, Jr. of the Manassas Police Department was on routine patrol in a police cruiser. Noticing that the side drive-in window at Spitler's Pharmacy had been pried open, he called by radio to the Prince William County Sheriff's Department for assistance and resumed his investigation. He heard someone running at the back of the building. Outside the back door, which had been split open, he found two or three boxes of articles taken from the store.

Looking around the area, Officer Newell saw a solitary car parked about 200 feet from Spitler's Pharmacy on the hard surfaced Prince William Hospital parking lot. As he approached he saw a man slumped in the car with his head lying back against the seat, who appeared to be either unconscious or drunk. When Officer Newell opened the car door and asked to see his operator's license the man, later identified as Fierst, "fumbled around" and produced some papers but not the license. Officer Newell noticed that there "was a high stage of perspiration on his forehead" and that his speech was "mumbly . . . wasn't too clear".

Officer A. D. Belcher of the Manassas Police Department arrived in time to see Fierst slumped over the wheel of his car. He observed that Fierst was "perspiring very heavily", that his lips were parched, and that he appeared at first to be "probably a drunk person or someone that needed help at the hospital". According to Belcher, Officer Newell had to rouse Fierst and help him from the car.

Officer Newell arrested Fierst for being drunk and searched him. In Fierst's trousers pocket he found a small brown bottle with a white cap and a yellow label on it. The printed label described its contents as 100 codeine sulfate hypodermic tablets "15 mg. (¼ gr.)",

requiring "Narcotic Order Blank". From another pocket of Fierst's trousers the officer removed a small cylinder resembling a tube of lipstick, later found to contain gas irritating to the eyes.

Upon completing his search Officer Newell drove Fierst to Spitler's Pharmacy where Deputy Sheriff R. G. Carson of Prince William County had arrived to take charge of investigating the breaking and entering of the store.

Officer Newell handed the bottle of tablets and gas cylinder to Deputy Carson and advised that he had arrested Fierst for being drunk. Carson at first thought that Fierst was intoxicated because of his "tremendous perspiration, speech pattern" and unstable and shaky condition but concluded after talking with him that he was "under the influence of narcotics".

Carson noticed that Fierst's shoes were "heavily coated with mud". Behind the store was a muddy field which had in it "a mud drainage ditch" 25 or 30 feet from the building. In the mud were footprints leading in the direction of the hospital parking lot and near the footprints had been found a box of articles from the store.

Carson placed Fierst under arrest for breaking and entering Spitler's Pharmacy. Officer Newell, concluding that the felony charge would take precedence over his misdemeanor charge, took no further action against Fierst for being drunk.

Carson delivered the bottle of tablets and gas tube to D. T. Agee, supervisor of the State laboratory in Richmond, for analysis. The bottle, received with its seal unbroken, was found by Agee to contain 100 tablets of codeine sulfate, a narcotic drug.

James B. Robinson, the pharmacist at Spitler's Pharmacy, had locked the store before leaving about 6 P.M. on October 18. After the break-in he discovered that a bottle of codeine sulfate tablets and bottles of other drugs were missing from the store. Robinson identified the Spitler's purchasing cost code mark and date received written in his handwriting on the bottle of tablets taken from Fierst.

## I.

Fierst contends that he was convicted on evidence produced by an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution,[1] which is now en-

---

[1] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

forceable against the states through the Due Process Clause of the Fourteenth Amendment. *Mapp* v. *Ohio*, 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961); *Ker* v. *California*, 374 U. S. 23, 30, 83 S. Ct. 1623, 1628, 10 L. Ed. 2d 726, 735, 736 (1963).

To determine the validity of the search and seizure we must first consider the arrest of Fierst without a warrant. We have long held that a law enforcement officer may lawfully arrest, without a warrant, for a misdemeanor committed in his presence. *Byrd* v. *Commonwealth*, 158 Va. 897, 164 S. E. 400 (1932); *Sullivan* v. *Commonwealth*, 210 Va. 201, 169 S. E. 2d 577 (1969). He must have probable cause, i.e. knowledge of sufficient facts and circumstances to warrant a reasonable man in believing that the offense has been committed. *Brinegar* v. *U. S.*, 338 U. S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949). Without probable cause for arrest the ensuing search would be invalid. *Rios* v. *United States*, 364 U. S. 253, 80 S. Ct. 1431, 4 L. Ed. 2d 1688 (1960).

Fierst's position in the car, his speech, the fumbling with papers and failure to produce his operator's license, his appearance, and manner of getting out of the car were evidence of intoxication.[2]

That no odor of alcohol was noticed by any of the officers is of little significance. See *Galliher* v. *Commonwealth*, 161 Va. 1014, 170 S. E. 734 (1933). Fierst might have been drinking an alcoholic beverage not detectable by odor or he might have managed to disguise the odor. Nor do we deem it important that Fierst was not extensively tested or questioned.

While Officer Newell was looking for burglary suspects, he had the right and duty to arrest for a misdemeanor committed in his presence.

There was ample evidence, as the trier of fact found, that Officer Newell had probable cause to arrest Fierst for being drunk in public, which is a misdemeanor. Code § 18.1-237. So the arrest was lawful.

Fierst next contends that his arrest, if lawful, was used as a "sham" or "pretext" for a search having no relationship to the offense of public drunkenness and that seizure of the bottle of pills was therefore unlawful. We disagree.

---

[2] The Alcoholic Beverage Control Act, Code § 4-2 (14), defines "intoxicated" for purposes of that Act as follows:

" 'Intoxicated'.—Any person who has drunk enough alcoholic beverages to so affect his manner, disposition, speech, muscular movement, general appearance or behavior, as to be apparent to observation, shall be deemed to be intoxicated."

Officer Newell had the right to search Fierst's person for weapons or for fruits or evidence of the offense for which he was arrested. *Quivers* v. *Commonwealth*, 135 Va. 671, 115 S. E. 564 (1923); *Preston* v. *United States*, 376 U. S. 364, 367, 84 S. Ct. 881, 883, 11 L. Ed. 2d 777, 780 (1964).

The bottle taken from Fierst may have had no relationship to the offense of public drunkenness but it contained contraband subject to lawful seizure. Since it came into Officer Newell's possession during a lawful search he was not required to ignore or surrender it. *Abel* v. *United States*, 362 U. S. 217, 238, 80 S. Ct. 683, 697, 4 L. Ed. 2d 668, 686 (1960). There, during a search incident to a lawful arrest on one charge, Abel was seen attempting to conceal on his person a paper found to contain a coded message. This paper was seized and was held admissible in evidence against him upon his trial under a different charge of conspiracy to commit espionage.

In *State* v. *Elkins*, 245 Ore. 279, 422 P. 2d 250 (1966), relied upon heavily by Fierst, the defendant was searched after being arrested without a warrant for being drunk. An unlabeled bottle of pills, later found to contain a narcotic, was seized on his person. This was held, by the majority opinion, to be inadmissible in evidence upon his trial for illegal possession of narcotics, because the arresting officer had no reasonable grounds to believe that the bottle contained contraband. We believe that *Abel, supra,* neither requires nor justifies any such restrictive rule, but if it does, Officer Newell had reasonable grounds to believe that the labeled bottle of pills taken from Fierst was contraband.

Other cases cited by Fierst are not relevant. They tend to hold that an officer may not arrest a man for a trivial offense, such as a minor traffic violation, and as incident to such arrest search his person or his car. *Amador-Gonzalez* v. *United States*, 391 F. 2d 308 (5th Cir. 1968).

We conclude that the lower court was right in holding that the bottle of codeine sulfate tablets was not inadmissible in evidence as the product of an unreasonable search and seizure.

## II.

■ There remain to be considered the questions of the admissibility of evidence on other grounds and the sufficiency of evidence.

Fierst challenges the admissibility in evidence of the bottle of tablets because he says there was no proof that it was the same

bottle removed from his possession. This argument is based on the fact that Deputy Carson had marked the bottle taken from Fierst and later could not find his mark. But this was no fatal defect. The evidence clearly supports the finding of the lower court that the bottle of tablets taken from Fierst came from Spitler's Pharmacy and was the one introduced in evidence against him as Exhibit 1.

This exhibit was identified by Officer Newell as the bottle which he took from Fierst and gave to Deputy Carson, by Carson as the bottle he delivered to the State's chemist Agee and by Agee as the bottle which he received from Carson and, after analyzing its contents, returned to Carson in court on the day of Fierst's preliminary hearing. Thus, there was both identification and continuity of possession, unlike *People* v. *Maurice*, 31 Ill. 2d 456, 202 N. E. 2d 480 (1964), which Fierst relies upon, where a stipulation failed to connect the heroin analyzed by the chemist with the material taken from the defendant.

The Commonwealth proved a breaking and entering and a theft of a bottle of codeine sulfate tablets and the evidence warranted an inference that the breaking and entering and theft were committed at the same time by the same person and as a part of the same transaction. Fierst's unexplained exclusive possession of the bottle of tablets shortly thereafter has the same efficiency to give rise to an inference that he is guilty of the breaking and entering as to an inference that he is guilty of the larceny. *Sullivan* v. *Commonwealth*, *supra*, 210 Va. at 203, 169 S. E. 2d at 579.

We conclude that the evidence was sufficient for the trier of fact to convict Fierst of statutory burglary and possession of illegally acquired narcotic drugs. But the evidence is not sufficient to sustain his conviction for possessing illegally acquired narcotic drugs in a quantity greater than 25 grains.

The lower court took "judicial notice" that the testimony of Agee was an opinion that the 100 tablets contained an aggregate of 25.25 grains of narcotic, instead of the 25 grains represented on the bottle label. To Fierst the practical difference between the manufacturer's representation and Agee's opinion is, aside from a difference in fines, the difference between a sentence of three to five years and a minimum sentence of twenty years. Code § 54-488, § 54-516.

We find Agee's testimony to be somewhat lacking in clarity. On direct examination he testified that the tablets were found to be one-fourth grain per tablet, ". . . a total of *100.25 grains* of codeine

sulfate per the hundred tablets. Actually the results showed a 101 per cent of guarantee on an average per tablet". (emphasis added). The error in his computation of grains is apparent, but he made no correction.

On cross-examination Agee described in detail his testing methods, based upon a random sample of tablets. Five tablets were used for identification in qualitative tests which determined the presence of codeine. Then about 20 tablets were used in two assays, employing different scientific procedures, to determine the number of grains per tablet. These 20 tablets averaged "approximately" 101 per cent of one-fourth grain each. Agee concluded that the remaining 80 tablets averaged the same percentage, although he admitted the possibility that they could have averaged 99 per cent.

In the absence of other evidence showing that such a random sample would prove the quantitative amount sufficient to establish the greater offense. Fierst cannot be convicted of possessing more than the 25 grains shown on the manufacturer's label. Accordingly, we affirm his conviction for statutory burglary and for possession of illegally acquired narcotic drugs. We reverse his conviction for possession of more than 25 grains of illegally acquired narcotic drugs and remand the case for new sentencing in accordance with the views expressed herein.

*Affirmed in part; reversed in part; and remanded.*