PEOPLE v DIXON

1. ARREST—WITHOUT WARRANT—PEACE OFFICERS—MISDEMEANOR.

A police officer may arrest without a warrant for a misdemeanor if the misdemeanor was actually committed in the officer's presence or if, from personal observation, the officer has reason to believe that a misdemeanor was committed in his presence (MCLA 764.15).

2. ARREST—PEACE OFFICERS—MISDEMEANOR—PROBABLE CAUSE.

A police officer has reason to believe that a misdemeanor has been or is being committed in his presence if the circumstances observed by him would lead a reasonable person to conclude that he was witnessing the commission of a misdemeanor by the person arrested.

3. ARREST—PEACE OFFICERS—MISDEMEANOR—PROBABLE CAUSE—HONEST MISTAKE.

An arrest for a misdemeanor which results from an honest and reasonable mistake is valid where the arresting officers had such information as would lead a reasonable person to conclude that they had just witnessed the commission of a misdemeanor.

4. SEARCHES AND SEIZURES—INVENTORY SEARCH—DETENTION.

An inventory search is any search of the person of one who has been arrested conducted preparatory to placing that person in detention, and normally consists of a police officer frisking the arrested person, thrusting his hands into that person's clothing, or ordering the person to empty his pockets in the officer's presence.

5. SEARCHES AND SEIZURES—INVENTORY SEARCH—MISDEMEANOR—TRAFFIC OFFENSE—STANDARD PROCEDURE.

An arresting officer and a jail turnkey have a right to conduct an inventory search when booking a defendant for the traffic-

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Arrest §§ 26, 28.
[2, 3] 5 Am Jur 2d, Arrest §§ 26, 28, 32.
[4, 5] 5 Am Jur 2d, Arrest § 73.
47 Am Jur, Searches and Seizures § 19.

offense misdemeanor of driving on a suspended or revoked driver's license where it is standard procedure, when arresting a person for that particular offense, to take the offender into custody.

Appeal from St. Clair, Stanley C. Schlee, J. Submitted Division 2 January 4, 1973, at Lansing. (Docket No. 12821.) Decided February 21, 1973. Leave to appeal applied for.

Herman L. Dixon was convicted of unlawful possession of a narcotic drug. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Walter W. Turton,* Prosecuting Attorney, and *John C. McColl,* Chief Appellate Attorney, for the people.

*Daniel S. Seikaly,* Assistant State Appellate Defender, for defendant.

Before: Quinn, P. J., and R. B. Burns and C. J. Byrns,* JJ.

R. B. Burns, J. At about 3 a.m. on March 19, 1971, the automobile defendant was driving was stopped by two officers of the Michigan State Police. The officers thought the vehicle was making excessive noise; they suspected a faulty muffler. It is a violation of the Michigan Vehicle Code to operate a motor vehicle with a faulty muffler. MCLA 257.707; MSA 9.2407. Trooper Beaver approached the vehicle. He asked defendant to depress the accelerator. Defendant complied. The officer then asked for the vehicle's registration and for defendant's license. Both were quickly produced. While defendant was removing his license from his wallet, Trooper Beaver noticed a second

---

* Circuit judge, sitting on the Court of Appeals by assignment.

license in the wallet. The second license aroused the officer's suspicions. When a driver renews his license he must surrender the old license; a duplicate license can be issued only if the original has been lost or mutilated. MCLA 257.301; MSA 9.2001; MCLA 257.313; MSA 9.2013. Trooper Beaver placed a radio call asking for a check on the status of defendant's authority to operate a motor vehicle. The officer was informed that defendant's license had been suspended. Thereupon, defendant was arrested for operating a motor vehicle while his license was suspended. MCLA 257.904; MSA 9.2604. Trooper Beaver immediately frisked defendant. The officer felt nothing that he suspected was a weapon. Defendant was then handcuffed and transported to the county jail.

At the county jail defendant was placed in a small room. Also present were Trooper Beaver and the jail turnkey. Defendant was ordered to remove his sweater. He did, and handed it to the turnkey. The turnkey went through the pockets. He found several small packets wrapped in tissue paper. Something shiny appeared through a tear in one of the packets. The packets were opened and a white substance, thought to be heroin, was discovered. Thereupon, defendant was arrested for unlawful possession of a narcotic drug. Defendant was then forced to submit to a "strip search". A sealed manila envelope was found in his right boot. The envelope was opened and more powder was found. Chemical analysis confirmed that the powder was heroin.

Defendant was acquitted in district court of the charge of driving while his license was suspended. Defendant's license had been suspended at one time, but had been reinstated. Apparently, however, the Secretary of State's records did not show the reinstatement.

Defendant was convicted by a circuit court jury of unlawful possession of a narcotic drug. MCLA 335.153; MSA 18.1123. He now appeals.

## I.

Defendant claims that the prosecution committed reversible error when it failed to indorse on the information and call as witnesses the three individuals present when defendant was first arrested. The trial judge found that the three persons were not res gestae witnesses. Such a finding was not clearly erroneous and we will not set it aside. GCR 1963, 517(1).

## II.

Defendant next claims that because his license had been reinstated, no misdemeanor had been committed in the presence of the arresting officers, and therefore his initial arrest was illegal and the search conducted subsequent to that arrest was derivatively illegal. A timely motion to suppress was filed below. The motion was denied.

One who operates a motor vehicle while his license is suspended is guilty of a misdemeanor. MCLA 257.904; MSA 9.2604.

A police officer may arrest without a warrant for any "misdemeanor committed in his presence." MCLA 764.15(a); MSA 28.874(a). We can find no decision by any court of this state which has squarely decided whether the misdemeanor-arrest statute requires that a misdemeanor actually has been committed in the presence of the arresting officer or whether it is sufficient that the arresting officer had reason to believe from his own observations that a misdemeanor has been committed in

his presence. Although our Supreme Court occasionally has used the language of the actual-commission test, it has never expressly adopted the test. It never had to. In the cases presented to our Supreme Court it has always been unnecessary to choose between the actual-commission test and the probable-cause test because a misdemeanor had in fact been committed in the presence of the arresting officer, or the arresting officer lacked even probable cause to believe that a misdemeanor had been committed in his presence, or the arresting officer had no personal knowledge of the misdemeanor for which he arrested, or the defendant had been arrested for a felony. See, *e.g., Donovan v Guy,* 347 Mich 457 (1956); *Odinetz v Budds,* 315 Mich 512 (1946); *State ex rel Wayne Prosecuting Attorney v Martin,* 314 Mich 317 (1946); *Larson v Feeney,* 196 Mich 1 (1917); *Cook v Hastings,* 150 Mich 289 (1907); *Klein v Pollard,* 149 Mich 200 (1907); *Burroughs v Eastman,* 101 Mich 419 (1894); *Pinkerton v Verberg,* 78 Mich 573 (1889); *Davis v Burgess,* 54 Mich 514 (1884). A panel of this Court hinted approval of the probable-cause test, but did not expressly so hold. *People v Bishop,* 30 Mich App 204 (1971).

Some jurisdictions have adopted the actual-commission test; others have opted for the probable-cause test. Even jurisdictions with misdemeanor-arrest statutes similar to ours differ as to the correct interpretation to be given those statutes. In the following jurisdictions, among others, a police officer may properly arrest without a warrant if he has probable cause to believe from personal observations that a misdemeanor has been committed in his presence. *Coverstone v Davies,* 38 Cal 2d 315; 239 P2d 876 (1952), *cert den sub nom Mock v Davies,* 344 US 840; 73 S Ct 50; 97 L Ed 653 (1952);

*State v DelVecchio,* 149 Conn 567; 182 A2d 402 (1962); *Hill v Day,* 168 Kan 604; 215 P2d 219 (1950); *State ex rel Neville v Mullen,* 63 Mont 50; 207 P 634 (1922); *Cave v Cooley,* 48 NM 478; 152 P2d 886 (1944); *Ryan v Conover,* 59 Ohio App 361; 18 NE2d 277 (1938); *Noce v Ritchie,* 109 W Va 391; 155 SE 127 (1930). See also Del Code, Tit 11, ch 19; Mass Gen Laws, ch 276, § 28; NH Rev Stat, ch 594; RI Gen Laws, Tit 12, ch 7. On the other hand, in the following jurisdictions a misdemeanor must have been actually committed in the presence of the arresting officer. *Adair v Williams,* 24 Ariz 422; 210 P 853 (1922); *People v Edge,* 406 Ill 490; 94 NE2d 359 (1950); *Parrott v Commonwealth,* 287 SW2d 440 (Ky, 1956); *People v Dreares,* 15 App Div 2d 204; 221 NYS2d 819 (1961).

We adopt the following rules:

A police officer may arrest without a warrant for a misdemeanor if the misdemeanor was actually committed in the officer's presence or if, from personal observations, the officer has reason to believe that a misdemeanor was committed in his presence. A police officer has reason to believe that a misdemeanor has been or is being committed in his presence if the circumstances observed by him would lead a reasonable person to conclude that he was witnessing the commission of a misdemeanor by the person arrested.

Such a rule will protect citizens from both arbitrary arrests and lax law enforcement. Warrantless arrests for misdemeanors must still be justified by more than mere suspicion. At the same time police officers will not be deterred from the conscientious performance of their duties by fear of liability for honest and reasonable mistakes.

In the instant case defendant concedes that his arrest for driving while his license was suspended

was the result of an honest and reasonable mistake. The arresting officers had such information as would lead a reasonable person to conclude that they had just witnessed the commission of a misdemeanor. Accordingly, we hold that defendant was legally arrested for driving while his license was suspended.

### III.

In his pretrial suppression motion defendant also claimed that the search which discovered the heroin was of unreasonable scope and therefore was illegal. The trial court denied the motion on the grounds that the search was an inventory search and as such was per se reasonable.

At the county jail defendant was searched twice. The first search was the inventory search which discovered heroin in the pocket of defendant's sweater. The second search was incident to defendant's arrest for unlawful possession of a narcotic drug. If the inventory search was legal, defendant was legally arrested for unlawful possession of a narcotic drug and the "strip search" conducted incident to that arrest was also legal. On the other hand, if the inventory search was not legal, defendant's second arrest was not legal and the search incident to that arrest was not legal. Of course, illegally seized evidence is inadmissible. *Mapp v Ohio,* 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961), *reh den* 368 US 871; 82 S Ct 23; 7 L Ed 2d 72 (1961).

An inventory search is any search of the person of an arrested individual conducted preparatory to placing that individual in detention. Such a search is normally part of the booking process. An inventory search occurs when a police officer frisks the

arrested individual, thrusts his hands into the individual's clothing, or orders the individual to empty his pockets in the presence of the officer.

The Michigan Supreme Court and this Court have previously refused to suppress evidence uncovered by routine inventory searches. *People v Robinson,* 388 Mich 630 (1972), *aff'g* 37 Mich App 115 (1971); and *People v Kinsley,* 38 Mich App 191 (1972). See also *People v Trudeau,* 385 Mich 276 (1971). We see no distinction because those cases involved felonies and the present case involves a traffic-offense misdemeanor. True, a police officer usually issues a ticket to a traffic offender and then lets him proceed on his way. The officer in the present case testified that standard procedure when arresting a person for driving on a suspended or revoked driver's license is to take the offender into custody. The officer and the turnkey had the right to conduct an inventory search when booking the defendant.

Affirmed.

All concurred.