**Terry L. YOUNG, Appellee and Cross-Appellant,**

v.

**CITY OF DES MOINES, Iowa, Appellant and Cross-Appellee.**

No. 2–58565.

Supreme Court of Iowa.

Feb. 22, 1978.

Rehearing Denied March 16, 1978.

Robert D. Hall and Larry J. Eisenhauer, Des Moines, for appellee and cross-appellant.

David J. Welu and James M. Sullivan, Asst. City Attys., for appellant and cross-appellee.

RAWLINGS, Justice.

False arrest damage action by plaintiff Terry L. Young resulted in judgment on jury verdict against defendant municipality. The city appeals challenging a jury instruction given regarding lawful arrest. Young cross-appeals trial court's matter of law holding that punitive damages were not recoverable from a municipality. We reverse on both appeals.

Acting without a warrant, several city policemen arrested Young on a charge of intoxication. A dismissal followed when arresting officers failed to appear at trial time. Young's subsequent action against the city was instituted under provisions of Chapter 613A, The Code 1973, Governmental Subdivision Tort Claims Act.

I. First considered is the city's contention that trial court's lawful arrest instruction was improperly phrased or otherwise inadequate.

In this regard, a peace officer's warrantless arrest authority is codified in § 755.4, which relevantly states:

"A peace officer may make an arrest * * * without a warrant:

"1. For a public offense committed or attempted in his presence.

"2. Where a public offense has in fact been committed, and he has reasonable ground for believing that the person to be arrested has committed it.

"3. Where he has reasonable ground for believing that an indictable public offense has been committed and has reasonable ground for believing that the person to be arrested has committed it."

Noticeably, trial court instructed the jury the city had the burden of proving Young's arrest was lawful and then said:

"Under the law of Iowa defendant's police officer was authorized to arrest a person and take him into custody without a warrant, where a public offense has in fact been committed and the police officer has reasonable ground for believing that the person to be arrested has committed the public offense.

" * * *

"If the defendant has established by a preponderance of the evidence:

"(1) That at or prior to the time involved herein a public offense in fact had been committed;

"(2) That defendant's police officer believed plaintiff had committed said public offense;

"(3) That defendant's police officer had reasonable ground for believing plaintiff had committed said public offense; then defendant's said police officer under the law had the authority to arrest plaintiff, and in such event defendant will have established said defense and your verdict will be for defendant."

The city timely objected on two grounds, reiterated on appeal. First, it alleges trial court should have instructed the jury pursuant to § 755.4(1); i. e., for an offense committed in the officers' presence. Second, it argues Young's arrest was lawful if the officers had probable cause to believe Young was committing a public offense in their presence.

Because intoxication is not an indictable offense, the arrest must have been authorized under either (1) or (2) of § 755.4.

Unquestionably, Young was arrested for an alleged violation of § 123.46: being intoxicated in public. And the officers' tes-

timony indicates the arrest resulted from conduct occurring in their presence. We therefore conclude trial court erred in failing to instruct on § 755.4(1).

II. Nevertheless, Young argues such error is harmless because the city's asserted probable cause standard will not suffice to support an arrest effected under § 755.4(1) as well as (2).

In other words, Young submits his arrest under (1) or (2) is lawful only if it is proved he actually committed a public offense. Supportively cited are *Snyder v. Thompson,* 134 Iowa 725, 112 N.W. 239 (1907) and *State v. Small,* 184 Iowa 882, 169 N.W. 116 (1918).

*Snyder* involved a false imprisonment action arising out of an intoxication arrest under (2)'s predecessor, wherein this court said, 134 Iowa at 728, 112 N.W. at 241:

"In the first place, a public offense must have been committed, and, in addition thereto, the officer making the arrest must have reasonable ground for believing that the person to be arrested committed it. Stated differently, if no public offense has *in fact* been committed, the section furnishes no justification for making the arrest." (emphasis supplied).

Subsequently, the court cited *Snyder* as authority in *Small,* a prosecution for resisting an arrest made pursuant to (1)'s predecessor, for this statement, 184 Iowa at 884, 169 N.W. at 117:

"An offense, then, must have been committed in the presence of the policeman, in order to have justified him in making the arrest. It is not enough that he may have so thought, or have had reasonable ground so to believe; the offense must *actually* have been attempted or committed in his presence, to have justified the arrest." (emphasis supplied).

Apparently to the same effect is *Stewart v. Feeley,* 118 Iowa 524, 528, 92 N.W. 670, 671–672 (1902), an earlier false arrest action also based on (1)'s predecessor.

Interestingly, § 755.4 has been subjected to little change since its enactment in 1851.[1] Section 2840, The Code 1851. Later our general assembly reenacted § 755.4 without significant alteration as part of the recent criminal code revision. Section 804.7, Supplement to the Code 1977.

■ Generally, when a statute receives a certain judicial interpretation and is subsequently reenacted without pertinent change, such interpretation is presumed adopted or approved by the legislature. See *In re Marriage of Kouba,* 257 N.W.2d 35, 38 (Iowa 1977); *Jahnke v. Incorporated City of Des Moines,* 191 N.W.2d 780, 787 (Iowa 1971); *State v. Stueve,* 260 Iowa 1023, 1027, 150 N.W.2d 597, 599–600 (1967); 2A Sutherland, Statutory Construction, § 49.09 (rev. 4th ed); 73 Am.Jur.2d, Statutes, § 322; 82 C.J.S. Statutes § 370b.

But the foregoing presumption is not conclusive. It stands only as one factor among many in determining legislative intent. 73 Am.Jur.2d, § 323 at 470–471; 82 C.J.S. Statutes § 370b at 853–854. As stated in *Wardlow v. City of Keokuk,* 190 N.W.2d 439, 448 (Iowa 1971), such presumption "is a forceful contention when a court is considering reversing its previous decisions construing a statute. However, even then it does not constitute a bar but merely a fact to be weighed in determining the advisability of changing a previous construction."

■ Neither does it nor the pressures of stare decisis prevent our reconsideration, repair, correction, or abandonment of past judicial pronouncements, especially when error is manifest. *Kersten Co., Inc. v. Department of Social Services,* 207 N.W.2d 117, 121 (Iowa 1973); *State v. Gorham,* 206 N.W.2d 908, 912–913 (Iowa 1973), and citations; *Fitzgerald v. Hale,* 247 Iowa 1194, 1205, 78 N.W.2d 509, 515 (1956); *Stuart v. Pilgrim,* 247 Iowa 709, 713–714, 74 N.W.2d 212, 215–216 (1956).

1. The phrase "reasonable cause" in (2) was changed in 1860 to "reasonable ground". § 4548, Revision of 1860. Subdivisions (3) and (4) were added by the 1947 Session of the Fifty-Second General Assembly, ch. 299, § 1.

■ Moreover, cautious application of the aforesaid presumption is particularly appropriate in light of two recent cases which fail to follow the demanding interpretation of § 755.4(1) fostered by *Small.* In *State v. Morris,* 227 N.W.2d 150, 152–153 (Iowa 1975) and *State v. Ricehill,* 178 N.W.2d 288, 291 (Iowa 1970), cert. denied, 401 U.S. 942, 91 S.Ct. 945, 28 L.Ed.2d 222 (1971), this court applied only the "probable cause" standard to warrantless arrests for misdemeanors allegedly committed in the officers' presence. Because of these conflicting interpretations, heavy reliance on the above-stated general rule of statutory construction is hazardous. 73 Am.Jur.2d, § 323 at 471 and n. 35; 82 C.J.S. Statutes § 370b at 853 and nn. 85–87.

■ In fact, it is equally important in statutory construction to interpret § 755.-4(1) fairly, reasonably and sensibly in accordance with the plain meaning of words used by the legislature. See, e. g., *Rodman v. State Farm Mutual Automobile Ins. Co.,* 208 N.W.2d 903, 909 (Iowa 1973). Similarly, courts should not under cover of construction extend, enlarge, or otherwise change the language chosen by the legislature. E. g., *State v. Wedelstedt,* 213 N.W.2d 652, 656 (Iowa 1973).

In this regard, the statute says "committed", not "actually committed", a term tacitly read into § 755.4(1) by *Small,* or "committed in fact", words arguably engrafted into (1) by *Snyder.* In light of the fact these constructions were relatively contemporaneous with passage of the enactment, we must next determine whether there is a common law justification for the *Small-Snyder* more demanding interpretation. § 4.6(4), The Code; 2A Sutherland, § 50.01 et seq.; 73 Am.Jur.2d, § 184 at 385; 82 C.J.S. Statutes § 363 at 796–799.

■ III. At common law a peace officer could make a warrantless arrest if he had reasonable suspicion a felony had been or was being committed by the person to be arrested. An officer's authority to make warrantless misdemeanor arrests was limited, however, to offenses involving breach of the peace committed in his presence. See

generally *United States v. Watson,* 423 U.S. 411, 418–421, 96 S.Ct. 820, 825–827, 46 L.Ed.2d 598 (1976); *Commonwealth v. Gorman,* 288 Mass. 294, 192 N.E. 618, 619–620 (1934); Perkins, The Law of Arrest, 25 Iowa L.Rev. 201, 228–240 (1940); 5 Am. Jur.2d, Arrest, § 24 et seq.; 6A C.J.S. Arrest § 16 et seq.

Such limitation was consistent with the general hostility toward state action untempered by judicial review of applications for warrants. Only where the crime was serious or the conduct violative of civil order could the officer act without first resorting to judicial processes.

As aforesaid, § 755.4 is a codification of the common law concerning warrantless arrests. However, Iowa like many states statutorily extended warrantless arrest authority to include *any* misdemeanor committed or attempted in the officer's presence.

This expansion was consistent with the modern trend to except, under various circumstances, warrantless state action. Although such exceptions to the Fourth Amendment warrant requirement are strictly drawn, they permit officers to react without delay when retreat to the courthouse would be both illogical and harmful to public safety. As explained in *Gerstein v. Pugh,* 420 U.S. 103, 113, 95 S.Ct. 854, 862, 43 L.Ed.2d 54 (1975):

"Maximum protection of individual rights could be assured by requiring a magistrate's review of the factual justification prior to any arrest, but such a requirement would constitute an intolerable handicap for legitimate law enforcement. Thus, while the Court has expressed a preference for the use of arrest warrants when feasible, * * * it has never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant. (authorities cited)."

■ Accordingly, when a public offense occurs in the presence of an officer, he may today immediately intervene and apprehend the offender, *then* promptly apply for judi-

cial approval of the arrest. Code Ch. 758. See also Iowa R.Crim.P. 2 and 1(2)(c). If the officer has erred, adequate judicial remedy for the arrestee is provided. Id. See generally *Gerstein v. Pugh,* 420 U.S. at 113–114, 95 S.Ct. at 863; Annot., 98 A.L.R.2d 966 (1964).

▮▮▮▮ Unfortunately, this court in *Small* chose to interpret the aforesaid statutory modification of the common law rule as imposing a form of strict liability on police officers; i. e., an arrest under § 755.-4(1) is illegal unless the suspect is convicted of the misdemeanor, or in the case of a false arrest action, the officer proves the plaintiff actually committed a public offense.

But as Professor Perkins said, 25 Iowa L.Rev. at 236–237:

"Common-law statements with reference to the power of an officer to arrest for a felony or breach of the peace committed in his presence were not intended to preclude the possibility of reasonable mistake of fact. * * * The language of the statute does not require this harsh construction, and it is to be hoped the clause referring to offenses committed in the officer's presence will ultimately be held to include the possibility of an excuse based upon reasonable mistake of fact."

Most courts agree with Professor Perkins. Section 755.4 is very similar, even occasionally identical to warrantless arrest statutes in many other states. And the prevailing view in these jurisdictions is that an arrest under a statute such as § 755.4(1) is lawful if the peace officer has "probable cause" to believe an offense is being committed in his presence, even if such offense is a misdemeanor and it later develops he was incorrect in such belief. *Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967); *Garske v. United States,* 1 F.2d 620, 622–625 (8th Cir. 1924); *Coverstone v. Davies,* 38 Cal.2d 315, 239 P.2d 876, 878–880, cert. denied, 344 U.S. 840, 73 S.Ct. 50, 97 L.Ed. 653 (1952); *State v. DelVecchio,* 149 Conn. 567, 182 A.2d 402, 406 (1962); *City of Miami v. Albro,* 120 So.2d 23, 26 (Dist.Ct. App.1960); *House v. Ane,* 56 Hawaii 383,

538 P.2d 320, 324–325 (1975); *People v. Dixon,* 45 Mich.App. 64, 205 N.W.2d 852, 854–855 (1973), rev'd on other grounds, 392 Mich. 691, 222 N.W.2d 749 (1974); *Lundeen v. Renteria,* 302 Minn. 142, 224 N.W.2d 132, 135–136 (1974); *Cave v. Cooley,* 48 N.M. 478, 152 P.2d 886, 888–889 (1944); *Ryan v. Conover,* 59 Ohio App. 361, 18 N.E.2d 277, 279 (1938); *Goodwin v. State,* 148 Tenn. 682, 257 S.W. 79, 80 (1924); *Fierst v. Commonwealth,* 210 Va. 757, 173 S.E.2d 807, 810 (1970); *Rodarte v. City of Riverton,* 552 P.2d 1245, 1252 (Wyo.1976); ALI, A model Code of Pre-arraignment Procedure, § 120.1 (1975), quoted in *United States v. Watson,* 423 U.S. at 422 & n. 11, 96 S.Ct. at 827. See also 5 Am.Jur.2d, Arrest, § 32; 6A C.J.S. Arrest § 20d.

Illustratively, in the oft-cited *Garske* case, the Eighth Circuit said, 1 F.2d at 622–623:

"It is the well-established doctrine now throughout the United States that for a crime, which they have probable cause to believe is being committed in their presence, though it be a misdemeanor, duly authorized peace officers may make arrest without a warrant. The probable cause which will justify arrest for a misdemeanor without a warrant must be a judgment based on personal knowledge acquired at the time through the senses, or inferences properly to be drawn from the testimony of the senses. Mere suspicion is not enough to justify arrest without a warrant for a misdemeanor and a search by force of the person so arrested."

And *House v. Ane,* 538 P.2d at 324–325, contains this apt statement:

"At common law a peace officer was authorized to arrest without a warrant for a misdemeanor offense, which amounted to a breach of the peace and which was being committed in the presence of the officer. *People v. Dixon,* 392 Mich. 691, 222 N.W.2d 749 (1974); *Cave v. Cooley,* 48 N.M. 478, 152 P.2d 886 (1944). A peace officer acted at his peril even though he had probable cause to believe that such a misdemeanor was being com-

mitted in his presence, if no such offense was in fact committed.

"Most jurisdictions have held statutes similar in HRS § 708–3 to grant to the police officer the authority to arrest without a warrant for a misdemeanor offense which he personally sees that in all probability is being committed in his presence."

"We conclude that under HRS § 708–3, a police officer may lawfully arrest a person without a warrant if the officer has probable cause to believe an offense is being committed in his presence, even though it be a misdemeanor. The probable cause which will justify such an arrest for a misdemeanor without a warrant must be based on the officer's personal knowledge acquired at the time through his senses, or inferences properly drawn from such knowledge. It is believed that such a construction of the statute harmonizes with what society would deem necessary to protect itself from lawlessness by facilitating the apprehension of criminals and preventing the commission of crimes. The countervailing interest of the community in the freedom of the individual citizens from arbitrary and capricious seizure is balanced by the requirement of probable cause."

Noticeably, many of the above cited cases involved false arrest or false imprisonment actions. In this context the need for a probable cause standard, regardless of the offense classification is particularly apparent. As noted in *Pierson v. Ray,* 376 U.S. at 555, 87 S.Ct. at 1218: "A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does."

Similar concerns were shared by the California Supreme Court in *Coverstone v. Davies,* 239 P.2d at 879–880:

"When an arrest for a misdemeanor is made upon the complaint of one other than the arresting officer, it is proper to require the securing of a warrant to justify the arrest. *Ware v. Dunn, supra,* 80

Cal.App.2d 936; 183 P.2d 128. However, to make the same requirement, when the officer sees that in all probability a public offense is being committed in his presence, would be to hamper law enforcement officers in their every day enforcement of the law. Peace officers would be reluctant to make arrests for fear that they would be held liable for having made an honest and reasonable mistake. It is thus manifest that the day to day problems of law enforcement require that peace officers be allowed to act without fear of being held liable upon the facts as they see them, provided such facts would lead a reasonable person to conclude that he was witnessing the commission of a public offense by the person arrested."

Singularly explicative is this statement by Perkins, 25 Iowa L.Rev. at 235:

"Consideration of statutory regulations of the privilege of a peace officer to arrest without a warrant for an offense not committed in his presence should be prefaced by two comments. (1) To whatever extent this privilege exists it is accompanied by a corresponding duty. The officer has no free choice in the matter as has a private citizen; and any rule which *requires* instant action should permit the one who must act to do so on the reasonable appearances at the moment—and protect him for any reasonable mistake of fact. To say to one: 'You *must* act instantly, but you do so at your peril and must take the risk of any mistake of fact, however reasonable', is clearly unjust. (2) There is no evidence of a deliberate intent to place such an added risk upon the peace officer in making arrests without a warrant, but some of the statutes *seem* to have done so by the inadvertent use of language originally intended to express only the position of the private person." (emphasis in original).

Finally, on a related aspect of the Fourth Amendment Professor LaFave observed:

"My basic premise is that Fourth Amendment doctrine, given force and effect by the exclusionary rule, is primarily intended to regulate the police in their

day-to-day activities and thus ought to be expressed in terms that are readily applicable by the police in the context of the law enforcement activities in which they are necessarily engaged. A highly sophisticated set of rules, qualified by all sorts of ifs, ands, and buts and requiring the drawing of subtle nuances and hairline distinctions, may be the sort of heady stuff upon which the facile minds of lawyers and judges eagerly feed, but they may be 'literally impossible of application by the officer in the field.'" LaFave, "Case-by-Case Adjudication" versus "Standardized Procedures": The Robinson Dilemma, 1974 Sup.Ct.Rev. 127, 141 (1975), quoted in *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 2489 n.3, 53 L.Ed.2d 538 (1977).

The foregoing judicial interpretations of identical or equivalent statutory language in other jurisdictions are entitled to unusual respect and deference and will usually be followed if sound, reasonable, and in harmony with justice and public policy. *Cassady v. Wheeler,* 224 N.W.2d 649, 652 (Iowa 1974).

This court is now persuaded the *Small* opinion and its importunate interpretation of § 755.4(1) imposes upon officers in the field an unduly onerous burden, not legislatively intended. This is peculiarly significant in light of the newly enacted criminal code, which creates four types of felonies and three kinds of misdemeanors, two of the latter actually being indictable public offenses. Sections 701.7, 701.8, 903.1, Supplement to the Code 1977. By the same token, public safety will surely suffer from the warrantless arrest burdens imposed upon justifiably cautious law enforcement officers.

In sum total, *Small* and related decisions express an erroneous concept which should not be further perpetuated by blind adherence to an otherwise often helpful rule of statutory construction. See *State v. Gorham,* 206 N.W.2d at 912–913, and citations; 2A Sutherland, § 49.05 at 238 & n.4.

On the other hand, a probable cause standard accomplishes more reasonably the "necessary accommodation between the individual's right to liberty and the State's duty to control crime." *Gerstein v. Pugh,* 420 U.S. at 112, 95 S.Ct. at 862. As more specifically stated in *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949):

"These long-prevailing standards [probable cause] seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice."

Furthermore, the individual is protected by the constitutionally mandated post-arrest determination of probable cause by a neutral and detached magistrate. *Gerstein v. Pugh,* 420 U.S. at 113–114, 95 S.Ct. at 863.

By reason of the foregoing, we today adopt a probable cause precept for arrests made under § 755.4(1); misdemeanors committed in an arresting officer's presence.

Such a standard in the present context is skillfully articulated in *Lundeen v. Renteria,* 224 N.W.2d at 136:

"[T]wo elements must appear before an offense is committed in the presence of an officer: '(1) He must become aware of the acts as a result of his sensory perception, and *(2) he must infer that the acts constitute an offense.'* In elaborating on the second of these elements, the court cited from *Garske v. United States,* 1 F.2d 620, 622 (8 Cir. 1924), as follows:

"'* * * [F]or a crime, which they have probable cause to believe is being committed in their presence, though it be a misdemeanor, duly authorized peace officers may make arrest without a warrant. The probable cause which will justify arrest for a misdemeanor without a warrant must be a judgment based on personal knowledge acquired at the time through the senses, or inferences properly to be drawn from the testimony of the senses.'

"The test, then, for the lawfulness of plaintiff's arrest is whether it was made with 'probable cause.'" (Emphasis supplied).

See also *State v. Evans,* 193 N.W.2d 515, 517 (Iowa 1972).

To the extent *State v. Small, Snyder v. Thompson* and other like interpretations of § 755.4(1) conflict herewith, they are now expressly overruled. As previously demonstrated, however, *Snyder* was in reality based on a § 755.4(2) arrest. Because our present holding relates to (1) only, there is no need to determine continuing viability of *Snyder's* (2) construction.

It therefore follows the judgment entered on jury verdict for Terry L. Young cannot stand. Consequently, this case must be remanded for a new trial.

IV. The punitive damage issue raised by Young's cross-appeal is next considered.

Unquestionably Young sought both compensatory and punitive damages. The city's motion to withdraw Young's punitive damage claim from the jury was sustained, trial court essentially holding such recovery may not be had against a municipal corporation under Chapter 613A, The Code.

The basic purpose for allowance of punitive damages, sometimes referred to as "smart money", is articulated in *Claude v. Weaver Construction Co.,* 261 Iowa 1225, 1229–1230, 158 N.W.2d 139, 143–144 (1968).

■ Ordinarily, actual damage must be established as a condition precedent to an award of smart money. *Holden v. Construction Machinery Company,* 202 N.W.2d 348, 359–360 (Iowa 1972).

■ It is also well settled, punitive damages are not recoverable as a matter of right. In the same vein it is understood the allowance of smart money rests with the fact finder, usually the jury. 22 Am.Jur.2d, Damages, § 240; 25 C.J.S. Damages § 117(2). More to the point, this court has repeatedly sanctioned allowance of exemplary damages, where appropriate, by way of punishment to the actor and as a deterrent to others. See e. g., *Holden* and *Claude,* both *supra; Katko v. Briney,* 183 N.W.2d 657, 662 (Iowa 1971); *Sebastian v. Wood,* 246 Iowa 94, 100–101, 66 N.W.2d 841, 844 (1954); 22 Am.Jur.2d, Damages, § 237; 25 C.J.S. Damages § 117(1).

In one of our early cases, *Bennett v. City of Marion,* 102 Iowa 425, 426, 71 N.W. 360 (1897), this court held punitive damages were not allowable against a municipal corporation. But *Bennett* was decided when the principle of governmental immunity was firmly entrenched except for a few instances in which liability was imposed by statute. Cf. *Bauman v. City of Waverly,* 164 N.W.2d 840 (Iowa 1969). Furthermore, *Bennett* observed the then existent general precept that punitive damages were allowable only if statutorily authorized. Today liability is the rule, immunity the exception. Implicit in Ch. 613A, which worked this change, is a reversal of the criterion already mentioned concerning the necessity for specific statutory authority in order to award punitive damages. As hereafter revealed, our Governmental Subdivision Tort Claims Act is so general the conclusion is inescapable that punitive damages are now recoverable in a proper case unless the statute specifically forbids them. Significantly, there is no such restriction in Ch. 613A.

Formerly the right to recover punitive damages even against *private* corporations was questionable. However, *Northrup v. Miles Homes, Inc. of Iowa,* 204 N.W.2d 850, 858–860 (Iowa 1973), settled that issue. Cf. *McCarthy v. J. P. Cullen & Son Corp.,* 199 N.W.2d 362, 368 (Iowa 1972). Even so we must still determine the status of *governmental* bodies with reference to punitive damages now that Ch. 613A has abolished their immunity from tort liability.

Seemingly, the weight of authority is against allowing such damages absent a statute expressly allowing them. See *Euge v. Trantina*, 422 F.2d 1070, 1074 (8th Cir. 1970); *Fox v. City of West Palm Beach*, 383 F.2d 189, 195 (5th Cir. 1967); *Smith v. District of Columbia*, 336 A.2d 831 (D.C. App.1975); *Fisher v. City of Miami*, 172 So.2d 455 (Fla.1965); *Foss v. Maine Turnpike Authority*, 309 A.2d 339, 345–346 (Me. 1973); *Desforge v. City of West St. Paul*, 231 Minn. 205, 42 N.W.2d 633, 634 (1950); *Chappell v. City of Springfield*, 423 S.W.2d 810, 812–815 (Mo.1968); *Brown v. Village of Deming*, 56 N.M. 302, 243 P.2d 609, 618 (1952); *Ranells v. City of Cleveland*, 41 Ohio St.2d 1, 321 N.E.2d 885, 887–889 (1975); *Lineberger v. City of Greenville*, 178 S.C. 47, 182 S.E. 101, 102 (1935); *Cole v. City of Houston*, 442 S.W.2d 445, 451 (Tex. Civ.App.1969); Annot., 19 A.L.R.2d 903, 908; 57 Am.Jur.2d, Municipal, Etc., Tort Liability, §§ 318–320; 63 C.J.S. Municipal Corporations § 947.

Only a few jurisdictions now depart from this rule, and some—New York and Vermont—do so only under most compelling circumstances. See *Hennigan v. Atlantic Refining Company*, 282 F.Supp. 667, 682–683 (E.D.Pa.1967) (applying Pennsylvania law), aff'd 400 F.2d 857 (3d Cir. 1968), cert. denied 395 U.S. 904, 89 S.Ct. 1739, 23 L.Ed.2d 216 (1969); *City of Covington v. Faulhaber*, 177 Ky. 623, 197 S.W. 1065, 1066 (1917); *Mastrodonato v. Town of Chili*, 39 A.D.2d 824, 333 N.Y.S.2d 89, 90 (1972); *Willett v. Village of St. Albans*, 69 Vt. 330, 38 A. 72, 74–75 (1897).

It still remains, those courts which deny punitive damage recovery do so on public policy grounds. Although stated in various forms by different tribunals, the reasons usually given are well summarized in *Fisher v. City of Miami*, 172 So.2d at 457:

"Basically, the justification for a punitive award is to punish the offender and to deter others from committing similar wrongs. * * * Punishment and deterrence being the principal supports for allowing this type of money award, the courts have historically declined to allow it in actions against municipal corporations for torts committed by their employees. While the wrongdoing employee is vulnerable to a punitive award, * * the municipality is not.

"* * *

"The public policy which motivates the conclusion appears to be sound. Since punishment is the objective, the people who would bear the burden of the award—the citizens—are the self-same group who are expected to benefit from the public example which the punishment makes of the wrongdoer.

"Another aspect of the matter is the rule which permits evidence of the wealth of a tortfeasor as a measure of the amount of punitive damages which should be awarded. * * * The theory is—the wealthier the wrongdoer, the greater the award. Otherwise stated, a relatively small sum might be adequate to punish a poor man. A much greater sum, for the same wrong, would be needed to punish a rich man. If this were allowed against municipalities, it would permit evidence of the unlimited taxing power as the measure of a proper verdict. This is often suggested as an adequate justification for denying an award of punitive damages against a city.

"* * *

"The deterrence element likewise adds little justification for this type of award against a municipality. In the first place it is to be assumed that the municipal officials will do their duty and if discipline of a wrongdoing employee is indicated, appropriate measures will be taken without a punitive award.

"Further, a huge award against the City would not necessarily deter other employees who generally would be unlikely to be able to pay a judgment assessed against them personally."

We find persuasive countervailing arguments to each of those expressed above. Virtually the same objections have been made and rejected as to private corporations. Furthermore, if a governmental subdivision be held answerable in punitive

damages, more care will go into the selection and training of its agents and employees. This will itself have a deterrent effect. Neither are we convinced the unlimited "wealth" of a municipality is an obstacle to such an award. In that regard this court has held evidence of ability to pay is admissible. *Hall v. Montgomery Ward & Co.,* 252 N.W.2d 421, 424 (Iowa 1977). Understandably, the amount to be awarded must, as in other cases, be left to the sound judgment of the jury, subject to judicial review.

Pursuing the subject at hand, we have held Ch. 613A removes all common law tort immunity previously accorded municipalities except as limited by § 613A.4. *Symmonds v. Chicago, M., St. P. & P. R. Co.,* 242 N.W.2d 262, 264 (Iowa 1976); *Jahnke v. Incorporated City of Des Moines,* 191 N.W.2d at 782. Also, Ch. 613A stands as a comprehensive and thorough treatment of governmental liability for torts. This view is thus articulated in *Dan Dugan Transport Co. v. Worth County,* 243 N.W.2d 655, 657 (Iowa 1976):

"Even a casual review of Chapter 613A, The Code, confirms the legislature intended to treat all substantive and procedural aspects of the subject matter, including imposition of liability, exemptions, limitations, notice, insurance, compromise, settlement, and payment."

More to the point, there is presently nothing which suggests the general assembly intended to prohibit assessment of punitive damages against governmental subdivisions. In fact our State Tort Claims Act (Chapter 25A, The Code), buttresses the foregoing conclusion. At the time Ch. 613A was enacted, Ch. 25A had been in effect for several years. Punitive damages are therein specifically precluded. See § 25A.4. Moreover, it is assumed the legislature was aware of this § 25A.4 prohibition when Ch. 613A was enacted. Additionally, the Iowa State Tort Claims Act is patterned after that of the federal government, which also specifically proscribes punitive damages. 28 U.S.C. § 2674. Consequently, failure to include a like immunity for municipal corporations can scarcely be attributed to inadvertence or oversight.

Finally, this court is satisfied the availability of punitive damages, where appropriate, in tort actions against governmental subdivisions will further deter unfounded and oppressive peace officer conduct under the guise of official action. Cf. *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 3048, 49 L.Ed.2d 1067 (1976); *Mapp v. Ohio,* 367 U.S. 643, 656–657, 81 S.Ct. 1684, 1692, 6 L.Ed.2d 1081 (1961); *Elkins v. United States,* 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960). See generally M. Belli, Punitive Damages, Trial, Dec. 1977, at 40–44.

It is to us apparent any question going to recovery of punitive damages from a municipal corporation is determinable by application of the same legal principles as in cases against private corporations. See *Northrup,* 204 N.W.2d at 859–860. Had the legislature intended otherwise, it could easily have so stated, as was the case in our State Tort Claims Act. This may, of course, still be done by amending Ch. 613A.

In brief, we now hold that under proper circumstances punitive damages are recoverable in tort claim actions against governmental subdivisions. Trial court erred in holding otherwise.

From this flows the conclusion that in the event evidence on retrial suffices to create a fact issue on punitive damages the jury shall be accordingly instructed.

REVERSED ON BOTH APPEALS AND REMANDED FOR NEW TRIAL.

All Justices concur except LeGRAND, REES and UHLENHOPP, JJ., who dissent from Divisions I, II, and III, and HARRIS, J., who dissents from Division IV.

LeGRAND, Justice (dissenting).

This is a case of statutory construction involving the meaning of § 755.4(1) and (2) relating to the manner in which warrantless arrests on non-indictable misdemeanors may be made. The provisions of the statute are set out in the majority opinion, and I will not repeat them here. Paraphrased, the statute provides persons may be arrested on probable cause for indictable offenses, but not for non-indictable ones.

I dissent from Divisions I, II and III because I believe the majority reaches a totally unacceptable result by ignoring a number of rules of statutory construction this court has previously adopted.

Since no constitutional questions are involved, I take it as admitted the legislature may enact any standards for arrest it desires. *City of Waterloo v. Selden,* 251 N.W.2d 506, 508 (Iowa 1977). The problem, then, is not to decide what the legislature *could* enact but what it *did* enact.

Sometimes there is real uncertainty about legislative intent. There can be none here. Long legislative acceptance of our construction of the statute plus a recent expression of legislative policy again confirming that interpretation belie what the majority says.

Section 755.4 has been part of our statutory law for more than a hundred years. During that time it has remained virtually unchanged. On at least two occasions, we have spelled out what the statute means. In the years following these decisions, the legislature left the statute unchanged. Under familiar rules of statutory construction, this means the legislature has accepted our interpretation. *Mallory v. Paradise,* 173 N.W.2d 264, 266 (Iowa 1969); *Kenkel v. Iowa State Highway Commission,* 162 N.W.2d 762, 766 (Iowa 1968).

In the present case we have even more conclusive evidence of legislative intent. A new criminal code was adopted last year. § 755.4 was *reenacted* in the new criminal code verbatim. *See* § 804.7, Iowa Criminal Code, a matter the majority quickly brushes aside.

In the face of this history, the majority today says this section does not, after all, mean what both the legislature and this court have said it means because other states have rules contrary to ours. Until now, I have thought that *our* legislature, not those of other states, decides such matters for *our* state. We may not rightly refuse to enforce valid legislative enactments simply because we do not like them. It is not within our power to separate good laws from bad ones.

The arguments used by the majority serve to point up the fallacy of the result reached.

We are told that both *Snyder v. Thompson,* 134 Iowa 725, 112 N.W. 239 (1907) and *State v. Small,* 184 Iowa 882, 169 N.W. 116 (1918) improperly "extend, enlarge, or otherwise change" the language of the statute—a strange accusation in view of what the majority does to it today—because *Snyder* said the offense must have been "committed in fact" while *Small* said it must have been "actually committed" instead of using the unembellished term "committed" as the statute did. I confess I am unable to make this subtle distinction. If an offense is committed, I am willing to say it was "committed in fact" or it was "actually committed." Surely this is not a "more demanding interpretation" of the statute, as the majority claims.

Neither can I agree that the instruction on legal arrest amounted to reversible error, or indeed error at all. This concerns the difference between subsections (1) and (2) of § 755.4.

In (2), an arrest may be made only if a non-indictable misdemeanor has actually been committed. In (1), an arrest may be made if it has been either committed or attempted in the officer's presence.

In some cases this might be significant; but this arrest was for intoxication. This is a status offense. Defendant was either intoxicated or he was not intoxicated. If intoxicated when the officer confronted him, defendant was intoxicated a few seconds before that time, unless we are to subscribe to a doctrine of instantaneous intoxication. The charge could be made under either subsection under these facts. The proof, the instructions, and the verdict would necessarily be the same in either event. It was not error to instruct as the court did. If it was error, it was clearly not reversible error. I have made no reference to that part of subsection (1) which speaks of attempting to commit an offense in the officer's presence because it is not here applicable. One does not attempt to be intoxicated.

The last reason urged by the majority is that the statute imposes an onerous burden upon the police. It does indeed as do many of the other duties placed upon them, some by judicial fiat. The statute under consideration is a legislative, not a judicial, determination of how an arrest must be made. The majority points out that the new criminal code creates new classes and grades of crime which make the policemen's lot even more difficult in deciding whether to arrest or not; but the legislature which made those classifications is the *same* body which at the *same* time decided to leave the arrest statute alone.

I am by no means convinced that § 755.4 (or its successor in the Iowa Criminal Code) is a good statute, but I am convinced that the legislative intent in enacting it is clear beyond peradventure. We have no right to judicially repeal a proper legislative enactment, which is what the majority does today.

I therefore dissent from Divisions I, II and III and from reversal on the city's appeal, although I join the majority in reversing on defendant's appeal on the grounds set out in Division IV of the majority of opinion.

REES and UHLENHOPP, JJ., join in this dissent.

HARRIS, Justice (concurring in part, dissenting in part).

I concur in the holding of the majority in divisions I, II, and III. However I am unable to agree with the conclusion reached in division IV and respectfully dissent therefrom.