STATE of Iowa, Appellee,

v.

William James FRATZKE, Appellant.

No. 88–1613.

Supreme Court of Iowa.

Oct. 18, 1989.

As Corrected Oct. 19, 1989.

Mark E. Schantz and Barbara G. Barrett of Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., Roxann M. Ryan, Asst. Atty. Gen., W. Wayne Saur, County

Atty., and John Hofmeyer III, Asst. County Atty. for appellee.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, NEUMAN, and SNELL, JJ.

NEUMAN, Justice.

Defendant William Fratzke stands convicted of the crime of harassment, Iowa Code § 708.7(1) (1987), because he wrote a nasty letter to a state highway patrolman to protest a speeding ticket. His argument for reversal of his conviction is both direct and persuasive: Our Constitution does not permit government officials to put their critics, no matter how annoying, in jail. We agree, and reverse the district court.

Following his conviction for speeding 68 miles per hour in a 55 mile per hour speed zone, William Fratzke mailed his fine and court costs to the Fayette County Clerk of Court. He accompanied his payment with a nine-paragraph letter addressed to the clerk and the state trooper who had arrested him, Tom Keenan. The contents of the letter are at the center of this controversy.

Fratzke's letter began by characterizing his speeding arrest as a case of "legalized highway robbery." He claimed the trooper's conduct resulted in an unfair trial that was the product of highway safety priorities gone askew. Because Trooper Keenan had refused to show Fratzke his radar equipment at the scene, Fratzke accused him of being a liar as well as a "thief disguised as a protector." Fratzke's contempt for the trooper and "others of his ilk" was revealed by his claim that Trooper Keenan "just enjoys stealing people's money so he can show everyone what a rednecked m*th*r-f*ck*r he is." (Asterisks in the original.) In closing, Fratzke expressed the wish—"not to be interpreted as anything whatsoever in the way of a threat"—that Trooper Keenan "have an early and particularly painful death hopefully at the side of a road somewhere where he's robbing someone else."

This correspondence reached the trooper by way of his supervisor, Lt. Noble. Lt. Noble, after determining that Trooper Keenan was annoyed by the letter, swore a complaint charging Fratzke with the crime of harassment. The Code section with which Fratzke was charged states, in pertinent part:

> A person commits harassment when, with intent to intimidate, annoy or alarm another person, the person ... [c]ommunicates with another by telephone, telegraph, or writing without legitimate purpose and in a manner likely to cause the other person annoyance or harm.

Iowa Code § 708.7(1).

Fratzke pleaded not guilty and the case went to trial before a Fayette County magistrate. Trooper Keenan testified that he was greatly annoyed by Fratzke's letter because it contained misstatements of fact which impugned his professional reputation and personal integrity. While conceding that "a person has a right to complain," he charged that the letter was no more than a vicious personal attack. In the trooper's words, "[t]his is just a cheap shot, behind-your-back type thing, and I don't believe anybody in this line of work needs to put up with this kind of —— from anybody."

Fratzke defended his letter as the "right ... and duty of every American" to alert government officials "that there's something wrong." He testified that he thought the letter contained at least eighteen valid points of criticism concerning alleged unfair trial procedure and the conduct of the trooper at the scene of the citation. He asserted that the sole purpose and intent of the letter was to protest "injustices in the system." Because the letter had such a legitimate purpose, Fratzke argued, the State's evidence was insufficient to prove he committed the crime of harassment. In the alternative, Fratzke argued that the statute was unconstitutional as applied to him, and facially vague and overbroad.

The magistrate found that the letter annoyed Trooper Keenan and was written without legitimate purpose because Fratzke's manner of complaint "would more quickly result in a fist fight" than bring about social change. He found

Fratzke guilty as charged and sentenced him to two days in jail.

Fratzke appealed the magistrate's ruling to the district court, renewing his challenge to the insufficiency of the evidence as well as the constitutional claims. The district court rejected all of Fratzke's contentions, concluding that protesting a speeding ticket was a "legitimate and constitutionally protected" activity, but that "[t]here was no legitimate purpose for the language and terms used by the defendant in his letter." The court upheld the sentence imposed by the magistrate.

I. Fratzke seeks reversal of his conviction on alternative grounds: (1) that the record contains insufficient proof that he violated the harassment statute; (2) that the statute is unconstitutional as applied to him because it impairs his first amendment right of free speech; and (3) that the statute is unconstitutionally vague and overbroad.

We note at the outset that we need not reach the constitutional questions because Fratzke's sufficiency of the evidence argument—though closely related to an applied constitutional challenge—gives him the redress he seeks. *See State v. Trucke*, 410 N.W.2d 242, 243 (Iowa 1987) (court has duty to avoid constitutional questions if merits of a case may be fairly decided without addressing them).

Familiar rules guide our review of defendant's challenge to the sufficiency of the evidence. We view the record in the light most favorable to the State, including all legitimate inferences which may fairly and reasonably be deduced from the evidence. *State v. Blair*, 347 N.W.2d 416, 418–19 (Iowa 1984). We are obliged to consider *all* of the evidence, and not just the evidence supporting the verdict. *Id.* at 419.

II. To maintain a successful prosecution for harassment under Iowa Code section 708.7(1), the State must prove beyond a reasonable doubt that a defendant

1. intended to intimidate, annoy or alarm another person
2. by a communication in writing or by telephone

3. without legitimate purpose and
4. in a manner likely to cause the other person annoyance or harm.

Fratzke claims that the State failed to establish both the "intent to annoy" and "without legitimate purpose" elements of the offense. The State asserts the elements are "two sides of the same coin." In other words, the State contends that Fratzke's intent to annoy the trooper—as inferred from his remarks—furnishes proof that his correspondence had no legitimate purpose. We shall consider the arguments in turn.

*A. Intent to annoy.* At trial, Fratzke disclaimed any intent to annoy Trooper Keenan with the letter. Moreover, he contends that criminal intent may not be inferred from profane or otherwise objectionable language used in a written or oral communication. In support of this argument, he cites *Baker v. State*, 16 Ariz.App. 463, 494 P.2d 68 (1972). In *Baker*, the Arizona Court of Appeals struck down as unconstitutional a harassment statute that *presumed* criminal intent from the mere use of profane or obscene language. *Id.* at 466–67, 494 P.2d at 71. Unlike the statute before us, however, the Arizona statute challenged in *Baker* contained no independent requirement that the communication be "without legitimate purpose." Thus, the Arizona court recognized that enforcement of the statute could lead to the outright criminalization of unpopular language, a result clearly at odds with the first amendment's guarantee of free speech. *See id.* at 466–67, 494 P.2d at 71–72.

The existence of such a "constitutional safety valve" in our own statute, we think, eliminates any constitutional impediment to application of the "intent to annoy" element of section 708.7(1). We have often held that because a defendant's intent is seldom capable of direct and positive proof, it may be inferred from the defendant's acts and surrounding circumstances. *See, e.g., State v. True*, 190 N.W.2d 405, 406–07 (Iowa 1971). Applying this standard to the record before us, we find substantial evidence to support the trial court's

conclusion that Fratzke's intent to annoy Trooper Keenan could be inferred from his choice of disparaging, and occasionally profane, remarks concerning Keenan's performance.

■ B. *Legitimate purpose.* We turn, then, to the trial court's interpretation and application of the "without legitimate purpose" element of section 708.7(1). While generally affirming the legitimacy of citizen complaints, the court below concluded that the "language and terms" used by Fratzke to convey his message offended the statute's proscription against communications written "without legitimate purpose." This distinction drawn by the trial court between the words used and the communication itself raises the decisive question on this appeal: Can the use of offensive language negate (and thereby criminalize) the otherwise legitimate purpose of protesting governmental action? We think not. Such restraint on free speech can only be justified in the case of "fighting words," a narrowly defined exception to the first amendment that has been erroneously applied by the trial court in this case.

"Fighting words" are those personally abusive epithets which "by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031, 1035 (1942). States are free to prohibit the use of "fighting words." *See id.* at 572, 62 S.Ct. at 769, 86 L.Ed. at 1035; *see also Lewis v. New Orleans,* 415 U.S. 130, 132, 94 S.Ct. 970, 972, 39 L.Ed.2d 214, 218 (1974); *Gooding v. Wilson,* 405 U.S. 518, 522, 92 S.Ct. 1103, 1106, 31 L.Ed.2d 408, 414 (1972); *Cohen v. California,* 403 U.S. 15, 20, 91 S.Ct. 1780, 1785, 29 L.Ed.2d 284, 291 (1971); *Terminiello v. Chicago,* 337 U.S. 1, 4, 69 S.Ct. 894, 896, 93 L.Ed. 1131, 1134 (1949).

The Constitution does not permit the states, however, to assume that every expression of a provocative idea will incite violence. *Texas v. Johnson,* 491 U.S. ——, ——, 109 S.Ct. 2533, 2541–42, 105 L.Ed.2d 342, 356–57 (1989). Instead, courts are required to carefully consider the actual circumstances surrounding such expression,

asking whether the expression "is directed to inciting or producing imminent lawless action." *Id.* at ——, 109 S.Ct. at 2542, 105 L.Ed.2d at 357 (citing *Brandenburg v. Ohio,* 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430, 434 (1969)).

The Supreme Court has made it clear that in order to uphold the constitutionality of a state statute that attempts to criminalize the use of opprobrious words or abusive language the statute must, by its own terms or as construed by the state's courts, be limited in its application to "fighting words" and must not be susceptible of application to speech that is protected by the first and fourteenth amendments. *Chaplinsky,* 315 U.S. at 573, 62 S.Ct. at 769–70, 86 L.Ed. at 1036; *Gooding,* 405 U.S. at 523, 92 S.Ct. at 1106, 31 L.Ed.2d at 414; *Lewis,* 415 U.S. at 134, 94 S.Ct. at 972–73, 39 L.Ed.2d at 219.

Recently, the Supreme Court has recognized that the "fighting words" doctrine logically deserves a more narrow application in the case of communications addressed to police officers, who—assuming they are properly trained—are expected to exercise greater restraint in their response. *City of Houston v. Hill,* 482 U.S. 451, 462, 107 S.Ct. 2502, 2510, 96 L.Ed.2d 398, 412 (1987). In *Hill,* a gay activist was arrested for "willfully interrupt[ing] a city policeman ... by verbal challenge during an investigation," a violation of a city ordinance that made it unlawful "to assault, strike or in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty." *Id.* at 454–55, 107 S.Ct. at 2505–06, 96 L.Ed.2d at 407–08. In striking the ordinance for overbreadth, the Court stated:

[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.... The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.

*Id.* at 461–62, 107 S.Ct. at 2509–10, 96 L.Ed.2d at 412–13. The Court concluded:

Today's decision reflects the constitutional requirement that, in the face of verbal challenges to police action, officers and municipalities must respond with restraint. We are mindful that the preservation of liberty depends in part upon the maintenance of social order. But the First Amendment recognizes, wisely we think, that a certain amount of expressive disorder not only is inevitable in a society committed to individual freedom, but must itself be protected if that freedom would survive.

*Id.* at 472, 107 S.Ct. at 2515, 96 L.Ed.2d at 418.

 It is against this backdrop that we consider the statute before us, mindful of our obligation to give it a construction that is constitutional, if that is possible. *State v. Sullivan,* 298 N.W.2d 267, 270 (Iowa 1980). We are convinced that in order to construe section 708.7(1) in keeping with the first amendment's guarantee of free expression, we must reject the trial court's notion that offensive language, in and of itself, will strip a communication of its otherwise legitimate purpose. Thus we hold that so long as a lawful purpose for the communication exists, no language short of "fighting words" may serve to defeat or criminalize the sender's message.

 The message before us simply does not lend itself to application of the "fighting words" doctrine. Assuming without deciding that Fratzke's words might, in some other context, tend to inflict injury or an immediate breach of the peace, there is no evidence that they were likely to do so here. Not only were Fratzke's words contained in a letter—a mode of expression far removed from a heated, face-to-face exchange—the letter was mailed not to the trooper's home but to the clerk of court, a neutral intermediary in the Fratzke–Keenan dispute. As noted by the United States Supreme Court in *City of Houston v. Hill,* peace officers "may reasonably be expected to 'exercise a higher degree of restraint' than the average citizen and thus be less likely to respond belligerently to 'fighting words.' " 482 U.S. at 462, 107 S.Ct. at

2510, 96 L.Ed.2d at 412 (citations omitted). And most importantly, by writing this letter, Fratzke was exercising his uniquely American privilege " 'to speak one's mind, although not always with perfect good taste, on all public institutions.' " *New York Times Co. v. Sullivan,* 376 U.S. 254, 269, 84 S.Ct. 710, 720, 11 L.Ed.2d 686, 700 (1964) (citation omitted).

In summary, Fratzke has been prosecuted and convicted because he wrote a letter; a letter critical of speed laws, critical of law enforcement priorities, and harshly critical of one state trooper. His conviction cannot stand because the finding that such criticism is "without legitimate purpose" would be equivalent to finding that the first amendment's promises are not worth the paper they are written on. The judgment of the district court must be reversed.

REVERSED.