STATE of Iowa, Appellee,

v.

Bret Robert BRECUNIER, Appellant.

No. 95–1555.

Supreme Court of Iowa.

May 21, 1997.

Linda Del Gallo, State Appellate Defender,
Patricia Reynolds, Assistant State Appellate

Defender, and Mark Newman, Forest City, for appellant.

Thomas J. Miller, Attorney General, Karen Doland, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Kasey Wadding, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

NEUMAN, Justice.

A jury found defendant Bret Brecunier guilty of interference with official acts while armed, a violation of Iowa Code section 719.1 (1993). The district court entered judgment on the aggravated misdemeanor conviction, imposing a sentence of two years with all but thirty days suspended.[1] Brecunier now appeals a number of adverse pretrial rulings, claiming: (1) a handgun seized during his arrest was the product of a warrantless search and should have been suppressed; (2) section 719.1 is overbroad because it restricted his right to verbally challenge a law enforcement officer engaged in official acts; and (3) section 719.1 is overbroad because it infringed on his right to bear arms necessary to protect personal property. Finding no constitutional violations, we affirm.

## I. Background Facts and Proceedings.

On a summer afternoon in 1994, defendant Bret Brecunier and several others gathered in the backyard of a friend, Craig Weiss. Weiss had summoned the men because a suspicious house fire earlier that day had elevated tensions in their Waterloo neighborhood. A gang of young teens roamed the block. Police officers had been on the scene earlier that afternoon, questioning Weiss after neighbors claimed he was seen loading a shotgun in his front window. Weiss responded that he was merely cleaning the weapon. The officers informed him that they would be patrolling the neighborhood, and to call 911 if trouble erupted.

After sundown the youngsters who had congregated in the alley behind Weiss's house began taunting the men in the backyard. Weiss and his friends reportedly brandished weapons as a show of force against the youngsters. When the two groups began heatedly exchanging threats, Weiss's wife called 911. Others in the neighborhood also called 911 at about the same time. Some of the callers complained about a man in the street with a shotgun.

Officers Timothy Frisch and James O'Hara arrived on the scene, responding to what was characterized by the shift sergeant as a "gun call." The officers moved the crowd gathered in the alley, then turned their attention to Weiss, who was standing in the backyard. The officers asked what he had in his hand. When Weiss displayed a shotgun, they drew their weapons and ordered him to put his down.

The record is conflicting as to whether Weiss immediately complied with the officers' directive. What is undisputed is that as Officer Frisch confronted Weiss, Brecunier pointed a large, six-volt Mag flashlight at him. This momentarily blinded the officer, preventing him from determining whether Weiss had in fact laid down the shotgun.

The officers then demanded that Weiss unlock the back gate. Weiss refused. He and Brecunier began shouting that the officers were unauthorized to enter the yard without a search warrant. Evidently determined to gain control of the situation, Officer Frisch asked Officer O'Hara to cover him while he climbed over the gate onto an old school bus parked inside the fenced yard. Officer Frisch testified that he went over the fence because he needed to "obtain that weapon for safekeeping." Brecunier evidently had his own idea about weapon safety. He testified that he "grabbed [the shotgun], put it in the bus, and locked the door."

As Officer Frisch climbed on the hood of the bus, Brecunier again aimed his flashlight at him, demanding his name and badge number. Although Brecunier maintains that he directed the beam only at the officer's chest

---

1. We note that the offense has subsequently been reclassified as a class "D" felony. *See* Iowa Code § 719.1 (1997).

in order to read his badge and name plate, the officer reported he was once more blinded by the light. The officer then pointed his service weapon at Brecunier and told him he would shoot if Brecunier did not put away the flashlight. Brecunier complied. As the officer jumped off the bus to pursue Weiss, Brecunier followed close behind, insisting their rights were being violated.

Backup officers soon arrived on the scene. Brecunier and Weiss were placed under arrest. A search incident to Brecunier's arrest yielded a .40 caliber handgun tucked in his belt. Other weapons and ammunition were seized from the yard and vehicles parked in the yard.

Brecunier was charged by trial information with interference with official acts while armed. *See* Iowa Code § 719.1. Two pretrial motions, denied by the court, form the basis of this appeal. First, Brecunier moved to suppress the seizure of his handgun (for which he held a permit) on Fourth Amendment grounds. Second, he filed a motion to dismiss, claiming enforcement of section 719.1 to these facts violates his rights under the First and Second Amendments to the United States Constitution. A jury found Brecunier guilty as charged and this appeal followed.

## II. Standard of Review.

■ Because the defendant asserts violation of constitutional safeguards, our review is de novo. *State v. Carlson,* 548 N.W.2d 138, 140 (Iowa 1996); *State v. Hatter,* 342 N.W.2d 851, 854 (Iowa 1983). Such review requires us to independently evaluate the totality of the circumstances revealed by the entire record. *Carlson,* 548 N.W.2d at 140.

## III. Issues on Appeal.

A. *Fourth Amendment.* Brecunier begins by claiming that the officers violated the Fourth Amendment by entering Weiss's backyard without a warrant.[2] He urges us to find the officers' actions illegal and, consequently, the handgun evidence obtained in

2. We pass, without discussion, the State's claim that Brecunier has no standing to raise this issue. The matter was not raised before the trial court and, thus, has not been preserved for appeal.

the search inadmissible. *See Carlson,* 548 N.W.2d at 140.

■ The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, offers citizens broad protection against warrantless searches and seizures. *State v. Cook,* 530 N.W.2d 728, 731 (Iowa 1995). The purpose of this protection is to safeguard the privacy and security of individuals against arbitrary intrusion by government officials. *Carlson,* 548 N.W.2d at 140; *accord Michigan v. Tyler,* 436 U.S. 499, 504, 98 S.Ct. 1942, 1947, 56 L.Ed.2d 486, 495 (1978). It has long been settled, however, that warrantless searches and seizures are permitted if they fall within one of the limited exceptions to the warrant requirement. *State v. Vincik,* 436 N.W.2d 350, 353 (Iowa 1989). The exceptions include (1) search by consent, (2) probable cause coupled with exigent circumstances, or (3) plain view. *Id.* The State carries the burden of proving by a preponderance of the evidence that officers acted reasonably under one of the exceptions. *State v. Predka,* 555 N.W.2d 202, 206 (Iowa 1996).

The question is whether reasonable exigent circumstances existed to justify the officers' entry into Weiss's backyard. Brecunier argues the six-factor test for exigency traditionally applied to such situations cannot be satisfied here. These factors include proof of (1) a grave offense, (2) a suspect reasonably believed to be armed, (3) probable cause to believe the suspect committed the crime, (4) strong reason to believe the suspect is on the premises, (5) strong likelihood of the suspect's escape if not apprehended, and (6) peaceable (if not consensual) entry. *State v. Johnson,* 232 N.W.2d 477, 480 (Iowa 1975) (citing the test enunciated in *Dorman v. United States,* 435 F.2d 385, 392–93 (D.C.Cir. 1970)). We have made plain, however, that these factors are not all inclusive, nor must each one be satisfied for a finding of exigency. *Hatter,* 342 N.W.2d at 855. As we said in *Hatter:*

*Des Moines Metro. Area Solid Waste Agency v. City of Grimes,* 495 N.W.2d 746, 750 (Iowa 1993).

The ultimate issue ... is whether an *emergency* or *urgent need* for the warrantless entry existed. A warrant will be required unless an immediate major crisis in the performance of duty afforded neither time nor opportunity to apply to a magistrate. We have found that exigent circumstances usually exist where there is danger of violence and injury to the officers or others; risk of the subject's escape; or the probability that, unless taken on the spot, evidence will be concealed or destroyed.

*Id.* (citations omitted).

■ Focusing on the first factor of the *Dorman* test, Brecunier attempts to minimize the gravity of the situation encountered by the officers responding to the 911 call. Analogizing to *Hatter*, Brecunier claims no emergency existed to justify a warrantless entry into Weiss's backyard. *Hatter*, however, is distinguishable on its facts. The defendant in *Hatter*, alleged to have kidnapped and sexually abused a female companion, challenged a warrantless arrest at his home the day following the assault. We found a lack of exigency in *Hatter* because the arresting officers had ample time to secure a warrant. *Id.* at 856. Contacted by the victim early in the morning, officers had interviewed her and collected evidence, had taken her to lunch, and had driven her by Hatter's house in the afternoon. The officers thereafter entered Hatter's home without a warrant or consent at 3 p.m., placing him under arrest *Id.* at 855–56. Under these facts, we determined that any sense of urgency necessitating a warrantless search had evaporated. *Id.* at 856.

The case before us is more in line with *Vincik*, 436 N.W.2d at 352, where officers made a warrantless search of a crime scene following defendant's call for 911 assistance. We held that officers called to an emergency situation could conduct a warrantless search limited to securing the area. *Id.* at 353.

The events revealed by the record before us required the officers to attend immediately to the situation. Tensions at the scene were escalating. An arson fire had destroyed a house on the same block earlier that day. Weiss had "mustered troops" at his house, bracing for a confrontation. The officers were responding to a 911 call where it was reported a man was in the street with a shotgun. Youngsters in the alley told officers that Weiss had pointed a shotgun at them. Weiss was holding a shotgun behind his back as he talked to the officers. And finally, the men in the yard were openly hostile to the general public gathered in the alley.

This was, indeed, a grave situation requiring the officers' immediate action. As we noted in another recent case:

The police have complex and multiple tasks to perform in addition to identifying and apprehending persons committing serious criminal offenses; by design or default, the police are also expected to reduce the opportunities for the commission of some crimes through preventative patrol and other measures, aid individuals who are in danger of physical harm, ... resolve conflict, [and] create and maintain a feeling of security in the community.

*Carlson*, 548 N.W.2d at 141 (approving "health and safety" warrantless search under certain extreme circumstances) (quoting 3 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 6.6, at 390 (3d ed. 1996)); *see also State v. Emerson*, 375 N.W.2d 256, 259 (Iowa 1985) ("exigent circumstances include emergency situations where officers or other persons may be subject to violence or injury"). This record amply supports the officers' legitimate concern for the safety of those present, particularly given the presence of a weapon at the scene. *See United States v. Rico*, 51 F.3d 495, 501 (5th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 220, 133 L.Ed.2d 150 (1995) (exigent circumstances include those "where firearms are present"); *United States v. Vance*, 53 F.3d 220, 222 (8th Cir.1995) ("Exigent circumstances exist ... when law enforcement officials have a 'legitimate concern for the safety' of themselves or others."). Thus the warrantless entry into Weiss's backyard to secure his shotgun was within the exigency exception to the constitutional warrant requirement.

■ Brecunier argues that even if entry into the yard was legal, probable cause did

not exist for his arrest. He seizes on language in *State v. Small,* an early obstruction-of-justice case where this court observed "[t]he law jealously guards the liberty of the citizen" and the citizen's right to resist unlawful arrest "with such force as appears . . . reasonably necessary." *State v. Small,* 184 Iowa 882, 885, 169 N.W. 116, 117 (1918), *overruled by Young v. City of Des Moines,* 262 N.W.2d 612 (Iowa 1978), *overruled on other grounds, Parks v. City of Marshalltown,* 440 N.W.2d 377 (Iowa 1989). Such "pre-probable cause" rhetoric, however, has given way to the more modern balance struck in the probable-cause doctrine. *See Young,* 262 N.W.2d at 617–19. The weighing that occurs while accommodating personal freedom on one hand, and crime control on the other, now favors allowing peace officers reasonable leeway in the performance of their official duties. *Id.*

> Probable cause for arrest or for search and seizure exists where the circumstances are "sufficient in themselves to warrant a man of reasonable caution in the belief" that criminal activity is in progress or has occurred. These conditions "are not technical, they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."

*State v. Dawdy,* 533 N.W.2d 551, 555 (Iowa 1995) (quoting *United States v. Dawdy,* 46 F.3d 1427, 1431 (8th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 195, 133 L.Ed.2d 130 (1995)).

Brecunier's reliance on *Small*'s outdated rationale goes to the heart of his arrest for interfering with official acts. He evidently believed the right to resist the police was reposed in him, when in fact the law gives the officer the right to make an arrest based on probable cause. The record amply supports the officer's finding of probable cause here. Brecunier twice obstructed Officer Frisch's sight by shining a high-powered flashlight in his eyes. He admittedly hid the shotgun that the officer went over the fence to retrieve. Because the officers' entry and arrest were lawful, we reject Brecunier's contention that the trial court should have sup-

pressed, as the fruit of an illegal arrest, the handgun evidence seized.

**B.** *First Amendment.* Brecunier next challenges his conviction on First Amendment grounds. He claims section 719.1 is facially overbroad in that it infringed on his right to question the officer about his warrantless entry into Weiss's yard.

■ A statute is overbroad if it "sweeps within its ambit those actions ordinarily deemed to be constitutionally protected." *State v. Todd,* 468 N.W.2d 462, 465 (Iowa 1991). Brecunier relies heavily on language taken from *State v. Fratzke,* 446 N.W.2d 781 (Iowa 1989). There we quoted from *City of Houston v. Hill,* 482 U.S. 451, 454–55, 107 S.Ct. 2502, 2505–06, 96 L.Ed.2d 398, 407–08 (1987), a case involving a gay activist arrested for "willfully interrupt[ing] a city policeman . . . by verbal challenge during an investigation." *Fratzke,* 446 N.W.2d at 784. The Court said in *Hill:*

> [T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. . . . The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.

482 U.S. at 461–62, 107 S.Ct. at 2509–10, 96 L.Ed.2d at 412–13.

■ While Brecunier may believe that he was merely engaging the officers in a constitutional dialogue concerning the warrantless entry, his actions carried any "conversation" beyond what the First Amendment guarantees. We reject his contention that, by wearing a name badge, Officer Frisch invited the shining of a light at him, or that Brecunier's conduct toward him was an insignificant hindrance since other officers present were not blinded by the light. Brecunier was arrested—not for any exposition of ideas—but for actions that interfered with officers engaged in official acts.

We have held that where conduct and not merely speech is involved, proof that a statute is overbroad "must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Todd,*

**370**

468 N.W.2d at 466 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830, 842 (1973)). Brecunier's aggressive action toward the officers was not protected expressive conduct. Thus the district court correctly rejected his First Amendment overbreadth challenge.

■ C. *Second Amendment.* Finally, Brecunier argues that section 719.1 infringes on his Second Amendment right to bear arms.[3] He challenges as overbroad the "while armed" element of the statute, which elevated his offense from a simple misdemeanor to an aggravated misdemeanor.

As with the First Amendment challenge discussed above, we review this overbreadth challenge to determine whether the statute has proscribed constitutionally protected activity beyond a reasonable doubt. *See State v. Mehner*, 480 N.W.2d 872, 879 (Iowa 1992). In *Mehner*, the defendant challenged the constitutionality of Iowa Code section 204.401(1)(e) (Supp.1989), a firearm enhancement provision that doubled the sentence for conviction of possessing a controlled substance with intent to deliver. *Id.* at 878. We found no constitutional violation because the statute proscribed criminal activity—possession of drugs—not constitutionally protected conduct. *Id.* at 879. So also here, Brecunier was not convicted for bearing a firearm. His crime was having in his possession a firearm while he engaged in unlawful activity.

The law may be unsettled as to the precise scope of what rights the Second Amendment protects,[4] but we can be certain here in what it does *not* protect. Brecunier has no constitutional right to be armed while interfering with lawful police activity. We recently held in *State v. Buchanan*, 549 N.W.2d 291, 294 (Iowa 1996), that section 719.1 is a crime of

general intent. Thus Brecunier's knowing possession of the firearm while interfering with official police action justified prosecution and conviction for the offense. His Second Amendment constitutional challenge must fail, and the judgment entered upon his conviction must be affirmed.

**AFFIRMED.**

---

3. "A well regulated Militia, being necessary to the security of a free State, *the right of the people to keep and bear Arms*, shall not be infringed." U.S. Const. amend. 2 (emphasis added).

4. *Compare Hickman v. Block*, 81 F.3d 98, 101 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 276, 136 L.Ed.2d 199 (1996) (holding that "the Second Amendment is a right held by the states, and does not protect the possession of a weapon by a private citizen"), *with United States v. Gomez*, 92 F.3d 770, 774 n. 7 (9th Cir.1996) ("[t]he Second Amendment embodies the right to defend

oneself and one's home against physical attack"), *and United States v. Hale*, 978 F.2d 1016, 1020 (8th Cir.1992), *cert. denied,* 507 U.S. 997, 113 S.Ct. 1614, 123 L.Ed.2d 174 (1993) (purpose of Second Amendment "is to restrain the federal government from regulating the possession of arms where such regulation would interfere with the preservation or efficiency of the militia"). *See also State v. Rupp*, 282 N.W.2d 125, 130 (Iowa 1979) (right to bear arms not absolute; it "extends only to situations bearing some 'reasonable relationship to the preservation or efficiency of a well-regulated militia' ").