# IN THE COURT OF APPEALS OF IOWA

No. 22-0277
Filed August 9, 2023

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**TRAVIS LYLE STARR,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Story County, James B. Malloy, District Associate Judge.

The defendant challenges the sufficiency of the evidence supporting his conviction for first-degree harassment. **AFFIRMED.**

John L. Dirks of Dirks Law Firm, Ames, for appellant.

Brenna Bird, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee.

Considered by Greer, P.J., Ahlers, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**POTTERFIELD, Senior Judge.**

Travis Starr challenges the sufficiency of the evidence supporting his conviction for first-degree harassment.  We review challenges to the sufficiency of the evidence for correction of errors at law.  *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012).  We affirm when the verdict is supported by substantial evidence, meaning "the quantum and quality of evidence is sufficient to 'convince a rational fact finder that the defendant is guilty beyond a reasonable doubt.'"  *State v. Banes*, 910 N.W.2d 634, 637 (Iowa Ct. App. 2018) (citation omitted).  In conducting our review, we consider the evidence in the light most favorable to the verdict, including all reasonable inferences that may be fairly drawn from the evidence.  *Id.*

At the underlying criminal trial, Officer Lane Thayer testified he detained Starr on an unrelated matter, at which time Officer Thayer smelled alcohol coming from Starr's person and noted he had bloodshot, watery eyes.  While Starr was being detained at the police station, he was handcuffed to a bench, where he sat.  Video exhibits introduced by the State show Starr lunging at Officer Thayer, who was outside of his reach.  Starr also told Officer Thayer, "I'll fucking kill you when I get out of here."  Based on this statement, Starr was charged with first-degree harassment.

The jury was instructed that Starr was guilty of first-degree harassment if the State proved the following:

> 1. On or about August 8, 2021, Travis Starr purposefully and without legitimate purpose had personal contact with Officer Lane Thayer.
> 2. Mr. Starr communicated a threat to commit the crime of murder . . . .
> 3. Mr. Starr did so with the specific intent to threaten, intimidate, or alarm Officer Lane Thayer.

The jury found Starr guilty as charged, and he appealed.  Here, Starr argues there is not substantial evidence he had the specific intent to threaten, intimidate, or alarm Officer Thayer.  He also argues he had a "legitimate purpose" in telling Officer Thayer he would kill him.

**Specific Intent.**  Starr argues there is not substantial evidence he had the specific intent needed to commit first-degree harassment.  He relies on the affirmative defense of intoxication, claiming the evidence showed his level of intoxication made him incapable of forming the requisite intent.  *See State v. Guerrero Cordero*, 861 N.W.2d 253, 258 (Iowa 2015), *overruled on other grounds by Alcala v. Marriott Intern., Inc.*, 880 N.W.2d 707–08 (Iowa 2016).  "From the beginning, the [intoxication] defense has been applied in Iowa only to specific-intent crimes, not those of general intent."  *Id.* at 259.  And "before intoxication could prevent a finding of specific intent, the offender not only had to be intoxicated, but so intoxicated that he or she could no longer reason and was incapable of forming a felonious intent."  *Id.*  When a defendant invokes the intoxication defense, "the State retains the burden of proving the element of specific intent."  *State v. Templeton*, 258 N.W.2d 380, 383 (Iowa 1977).

Starr gave notice before trial that he intended to rely upon the affirmative defense of intoxication.  And there was evidence introduced at trial that Starr was consuming alcohol before he was detained by Officer Thayer.  Officer Thayer testified about Starr's bloodshot, watery eyes and being able to smell alcohol coming from him.  And Starr testified he drank nearly two pints of whiskey during a short window of time a few hours before Officer Thayer detained him.  Thus, a

number of facts support Starr's claim that he was intoxicated at the time he made the threatening statement to Officer Thayer. And, normally, "when a defendant urges a defense of voluntary intoxication which is supported by substantial evidence, such evidence is to be considered by the jury on the material issue in the State's case upon which it bears . . . ." *Id.* at 380.

But here, the jury was not instructed on the intoxication defense, and Starr never asked for the instruction to be given.[1] "[O]bjections to giving or failing to give jury instructions are waived on direct appeal if not raised before counsel's closing arguments, and the instructions submitted to the jury become the law of the case." *State v. Fountain*, 786 N.W.2d 260, 262 (Iowa 2010). Because the jury was not instructed to consider whether Starr's level of intoxication impacted his ability to form specific intent, and because the instructions as given are the law of the case, we do not reach the merits of Starr's claim that the jury should have acquitted him based on his intoxication and resulting incapacity to form the requisite intent. *See State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009) (explaining that when a defendant does not "object to the instructions given to the jury at trial . . . the jury

---

[1] While no instruction was given in this case, for reference, the model instruction for "intoxication as a defense" states:

> The defendant claims he was under the influence of intoxicants at the time of the alleged crime. The fact that a person is under the influence of intoxicants does not excuse nor aggravate [his] [her] guilt.
>
> Even if a person is under the influence of an intoxicant, he is responsible for his act if he had sufficient mental capacity to form the specific intent necessary to the crime charged or had the specific intent before he fell under the influence of the intoxicant and then committed the act. *Intoxication is a defense only when it causes a mental disability which makes the person incapable of forming the specific intent.*

Iowa Crim. Jury Instructions 200.14 (emphasis added).

instructions become the law of the case for purposes of our review of the record for sufficiency of the evidence").

**Legitimate Purpose.** Starr maintains the State failed to prove he was without "legitimate purpose" when he told Officer Thayer "I'll fucking kill you when I get out of here." On appeal, he argues his statement to Officer Thayer was akin to the statements made by the defendant in *State v. Fratzke*, 446 N.W.2d 781, 784 (Iowa 1989), where our supreme court reversed the defendant's harassment conviction after concluding his statements served the legitimate purpose of protesting governmental action.

We reject Starr's contention. As a preliminary matter, we note that the "legitimate purpose" that would avoid violation of the harassment statute refers not to a legitimate purpose for the personal contact, but a legitimate purpose to threaten, intimidate, or alarm. *State v. Evans*, 672 N.W.2d 328, 331 (Iowa 2003) ("Because there must be a specific intent to threaten, intimidate, or alarm, the only legitimate purpose that will avoid the criminal status conferred by the statute would be a legitimate purpose to threaten, intimidate, or alarm."). So, while Starr may have had a legitimate purpose for having personal contact with Officer Thayer—to protest government action—he points to no legitimate purpose to threaten, intimidate, or alarm while doing so. As such, there was sufficient evidence to allow the jury to find that Starr acted without legitimate purpose.

Turning to Starr's constitutional claim based on *Fratzke*, we note that our supreme court relied on *Fratzke* in concluding that the harassment statute's requirement that the defendant's conduct be without legitimate purpose is one reason why the statute does not infringe on First Amendment rights. *See id.* ("In

[*Fratzke*]*,* we held that First Amendment considerations raised with respect to subsection (1)(a) of this statute were obviated because of the requirement that the communication be 'without legitimate purpose.' A similar requirement exists with respect to the contact that is criminalized under subsection (1)(b) of the statute.").

The defendant in *Fratzke* "wrote a nasty letter to a state highway patrolman to protest a speeding ticket." 446 N.W.2d at 781. The letter was mailed, along with the defendant's payment of a fine and court costs, to the county clerk of court. *Id.* The letter was addressed to the state trooper who arrested him and included comments "characterizing his speeding arrest as a case of 'legalized highway robbery,'" claiming "the trooper's conduct resulted in an unfair trial that was the product of highway safety priorities gone askew," and "accus[ing] [the trooper] of being a liar as well as a 'thief disguised as a protector'" because he "refused to show the defendant the radar equipment at the scene." *Id.* at 781. The defendant went further, claiming the trooper "just enjoys stealing people's money so he can show everyone what a red-necked m*th*r-f*ck*r he is" and, in closing, "expressed the wish—'not to be interpreted as anything whatsoever in the way of a threat'— that [the trooper] 'have an early and particularly painful death hopefully at the side of a road somewhere where he's robbing someone else.'" *Id.* (asterisks in original). The district court apparently found the defendant's letter to be a legitimate citizen complaint but concluded his "language and terms" violated the law "against communications written 'without legitimate purpose.'" *Id.* at 784. Our supreme court reversed the defendant's conviction, ruling, "This distinction drawn by the trial court between the words used and the communication itself raises the decisive question on this appeal: Can the use of offensive language negate (and thereby

criminalize) the otherwise legitimate purpose of protesting governmental action? We think not." *Id.*

As with the defendant in *Fratzke*, Starr was criminally charged and convicted based on his speech. Generally speaking, the First Amendment to the United States Constitution "prevents states from punishing 'the use of words or language not within "narrowly limited classes of speech."'" *State v. Milner*, 571 N.W.2d 7, 13 (Iowa 1997) (quoting *Gooding v. Wilson*, 405 U.S. 518, 521–22 (1972)). And "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. . . . The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill*, 482 U.S. 451, 461–62 (1987). That said, some categories of speech fall outside the protection of the First Amendment. *See, e.g.*, *Counterman v. Colorado*, 143 S. Ct. 2106, 2113–14 (2023) (recognizing "historical and traditional categories" of unprotected speech, including incitement, defamation, obscenity, and true threats). "True threats of violence are outside the bounds of First Amendment protection and punishment as crimes." *Id.* at 2111.

"True threats are 'serious expression[s]' conveying that a speaker means to 'commit an act of unlawful violence.'" *Id.* at 2114 (citation omitted). "The 'true' in that term distinguishes what is at issue from jests, 'hyperbole,' or other statements that when taken in context do not convey a real possibility that violence will follow (say, 'I am going to kill you for showing up late')." *Id.* Here, Starr physically lunged at Officer Thayer. While his restraints prevented him from making contact with the officer, the action bolsters the conclusion that his threat to kill Officer Thayer was

more than just bluster. Starr's "actions went beyond mere criticism of police conduct. They were threats. The First Amendment 'does not protect speech that constitutes a true threat.'" *State v. Howard*, No. 99-0890, 2000 WL 962655, at *3 (Iowa Ct. App. July 12, 2000) (quoting *Milner*, 571 N.W.2d at 14). We conclude there is substantial evidence Starr's statement was a true threat and, therefore, did not have a legitimate purpose.

We affirm Starr's conviction.

**AFFIRMED.**