# IN THE COURT OF APPEALS OF IOWA

No. 24-1045
Filed December 17, 2025

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**SHANE MICHAEL TESLIK,**
　　　Defendant-Appellant.
_____

Appeal from the Iowa District Court for Linn County, Jason D. Besler, Judge.

A criminal defendant appeals his convictions for voluntary manslaughter and disorderly conduct. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Katherine Wenman, Assistant Attorney General, for appellee.

Considered without oral argument by Greer, P.J., and Schumacher and Ahlers, JJ.

**SCHUMACHER, Judge.**

Shane Teslik appeals his convictions for voluntary manslaughter and disorderly conduct following a jury trial, asserting the evidence was insufficient to support the convictions because he did not know or should not have known his use of a racial epithet would cause a violent reaction by the victim. Upon our review, we affirm.

I.      **Background Facts & Proceedings**

In December 2022, Teslik and his girlfriend, Jesse Chavez, lived together along with Teslik's son and Chavez's daughter. Teslik and Chavez owned an American Bulldog. Teslik and Chavez had frequent disagreements with their neighbor, Devonna Walker, mostly about the dog.

On December 19, Chavez and Walker had an argument that was recorded by Chavez's daughter. While arguing, Chavez stated that Walker was deficient in caring for her children, and Walker reciprocated the same sentiment. Walker, in response to the accusation, punched Chavez and struck Teslik with a green pipe. Later, after the argument, Teslik ran toward Walker in the apartment parking lot and stated, "I'm going to fucking kill you."

On December 21, Walker was unloading groceries from her vehicle while Chavez and Teslik were walking their dog. The three argued about the dog being off a leash. During this confrontation, Teslik called Walker the N-word—using the actual word rather than the euphemism "N-word." Teslik also stated during this argument, "Next time you come near my house or my family, I'll fucking kill you." Walker took issue with Teslik's use of the racial slur. A bystander told Teslik to stop using that word, which initiated another confrontation. Teslik and Chavez

2

contacted law enforcement concerning this incident and the prior attack by Walker. No criminal charges were filed.

On January 2, 2023, Chavez was outside her apartment with the dog. Walker and a friend were walking by, and another argument ensued, which prompted Teslik to come to the door of the apartment. Teslik instructed Chavez to return inside, yelling at her several times. Teslik also stated to Walker, "Next time you come near my fucking house or my family I'm going to fucking kill you." He then went back inside and grabbed a knife he had been using for dinner preparations and returned to the front door. Teslik repeatedly yelled at Walker to return to her own apartment. The confrontation continued, with Walker claiming Chavez was a racist and Chavez denying that she ever used a racial slur toward Walker. Teslik then shouted from the doorway, "Shut the fuck up you fucking [N-word]."

Walker responded by screaming and running toward Teslik's apartment door. She ran into Chavez, who had her back turned to Walker. Both Chavez and Walker fell to the ground. Walker stood up and began to punch Teslik, who was still standing in the doorway. While Walker and Teslik were physically engaged, Teslik stabbed Walker in the left chest—puncturing her left lung, pericardial sac, and aorta—causing fatal injuries. Teslik called emergency services, stating that Walker was injured and that he was not aware if she was still living. The events of January 2 were recorded on a cell phone by a neighbor.

The State charged Teslik with voluntary manslaughter in violation of Iowa Code section 707.4 (2023) and disorderly conduct in violation of section 723.4(1)(c). During the proceedings, Teslik admitted that he stabbed

3

Walker and asserted an affirmative defense of justification. Following a jury trial, Teslik was found guilty of both charges and sentenced to ten years of incarceration for the voluntary manslaughter conviction and to thirty days of incarceration for the disorderly conduct conviction. The district court ordered the sentences to run concurrently. Teslik appeals.[1]

## II. Standard of Review

Sufficiency-of-the-evidence claims are reviewed for correction of errors at law. *State v. Kieffer*, 17 N.W.3d 651, 655 (Iowa 2025). We will "uphold the jury's verdict if it is supported by substantial evidence." *Id.* "Substantial evidence is defined as evidence that is sufficient to 'convince a rational factfinder the defendant is guilty beyond a reasonable doubt.'" *Id.* (citation omitted). "[W]e view the evidence 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *Id.* (citation omitted). We do not re-weigh the evidence; we review only to determine if there is substantial evidence to support the convictions. *See State v. Hernandez*, 20 N.W.3d 502, 507–08 (Iowa Ct. App. 2025) ("A criminal defendant is not entitled to acquittal merely because he wishes the jury had believed him . . . ."). We review constitutional challenges de novo. *State v. Baker*, 688 N.W.2d 250, 252 (Iowa 2004).

---

[1] Teslik raised a constitutional claim in his brief, asserting Teslik's statement is protected speech under the First Amendment. He did not file a notice of a constitutional challenge under Iowa Code section 625A.7. Even construing his claim to include a challenge to the constitutionality of the statute, we do not have discretion to dismiss the issue for lack of notice. Iowa Code § 625A.7(2). We review the First Amendment challenge on the merits.

## III.    Analysis

Highlighted in this appeal is the interplay between the simple misdemeanor conviction of disorderly conduct for the use of abusive language and the stand-your-ground defense.

Teslik filed a motion for discretionary review with the supreme court, asserting his convictions are intertwined as he is required to challenge the disorderly conduct conviction to properly challenge the voluntary manslaughter conviction.  Prior to transfer to our court, the supreme court granted the motion and consolidated the discretionary review of the simple misdemeanor conviction with the direct appeal of the voluntary manslaughter conviction.  *See* Iowa Code § 814.6(2)(d); Iowa R. App. P. 6.151.

Teslik's case hinges on whether Teslik's use of the racial slur qualifies as an "abusive epithet" that he "kn[ew] or reasonably should [have] know[n] is likely to provoke a violent reaction by another" to support the conviction of disorderly conduct.  Iowa Code § 723.4(1)(c).  Teslik asserted a justification defense based on Iowa Code sections 704.3 and 704.4.[2]  These statutes allow reasonable force, including deadly force, to defend oneself and property from unlawful force or interference.  *See* Iowa Code § 704.4; *see State v. Johnson*, 7 N.W.3d 504, 509 (Iowa 2024).  "Reasonable force" is defined as

> force and no more which a reasonable person, in like circumstances, would judge to be necessary to prevent an injury or loss and can

---

[2] Section 704.3 provides: "A person is justified in the use of reasonable force when the person reasonably believes that such force is necessary to defend oneself or another from any actual or imminent use of unlawful force."  Section 704.4 provides: "A person is justified in the use of reasonable force to prevent or terminate criminal interference with the person's possession or other right in property."

5

include deadly force if it is reasonable to believe that such force is necessary to avoid injury or risk to one's life or safety or the life or safety of another, or it is reasonable to believe that such force is necessary to resist a like force or threat.

Iowa Code § 704.1(1). Importantly, section 704.1(3) addresses the "duty to retreat" in relation to the use of reasonable force: "[a] person who is not engaged in illegal activity has no duty to retreat from any place where the person is lawfully present before using force as specified in this chapter."

When reviewing sufficiency of the evidence, we turn to the relevant jury instructions employed by the district court:

> The State must prove all the following elements of Voluntary Manslaughter:
> 1. On or about the 2nd day of January 2023, the defendant intentionally stabbed [Walker].
> 2. [Walker] died as a result of being stabbed.
> 3. The stabbing was done solely by reason of sudden, violent and irresistible passion resulting from serious provocation.
> 4. Defendant was not justified as defined in these Instructions.
> . . . .
> A "serious provocation" is conduct that would cause a reasonable person to have a sudden, violent, and irresistible passion.
> Passion is not sudden, violent, and irresistible if there is an interval of time during which a reasonable person would, under the circumstances, have time to reflect and bring his passion under control and suppress the impulse to kill.
> Words alone, however abusive or insulting, cannot be serious provocation.
> . . . .
> The State must prove all the following elements of the crime of Disorderly Conduct:
> 1. On or about the 2nd day of January 2023, the defendant directed an abusive epithet or made a threatening gesture toward the person of [Walker].
> 2. The Defendant knew or reasonably should have known the gesture or abusive epithets he used were likely to provoke a violent reaction by [Walker].
> . . . .
> For the defendant to know or have knowledge of something means he had a conscious awareness that by calling [Walker] a

6

"[N-word]" he would be eliciting or provoking a violent reaction from [Walker].

. . . .

The defendant claims he was justified in using reasonable force to prevent injury to other persons, including the defendant, from [Walker]'s intentional commission of a Burglary in the First Degree, a forcible felony. The defendant was justified in using reasonable force if he reasonably believed that such force was necessary to defend himself or another from any actual or imminent use of unlawful force and prevent or terminate the commission of the Burglary in the First Degree he reasonably believed was being or would be imminently perpetrated by [Walker] upon his premises.

Reasonable force is only the amount of force a reasonable person would find necessary to use under the circumstances to prevent death, injury, or completion of said Burglary in the First Degree. If in the defendant's mind the danger and need to use force to prevent the Burglary in the First Degree was actual, real, imminent, or unavoidable, even if the defendant was wrong in estimating it or the force necessary to repel it, the force was justified if the defendant had a reasonable basis for his belief and responded reasonably to that belief. It is not necessary that there was actual danger, but the defendant must have acted in an honest and sincere belief that the danger actually existed. Apparent danger with the defendant's knowledge that no real danger existed is no excuse for using force. Reasonable force can include deadly force if it is reasonable to believe that such force is necessary to resist a like force or threat, prevent or terminate the commission of a Burglary in the First Degree, or avoid injury or risk to one's life or safety or the life or safety of another. The State must prove beyond a reasonable doubt that the defendant's use of force was not justified.

. . . .

A person who is not engaged in Disorderly Conduct . . . at the time of using said force has no duty to retreat from any place where the person is lawfully present before using force as described in these instructions.

. . . .

If any of the following is true, the defendant's use of force was not justified:

1. The defendant did not have a reasonable belief that it was necessary to use force to prevent an injury or loss.

2. The defendant used unreasonable force under the circumstances.

3. The defendant was engaged in Disorderly Conduct . . . at the time and in the place where he used force, he made no effort to retreat, and retreat was a reasonable alternative to using force.

If the State has proved any of these beyond a reasonable doubt, the defendant's use of force was not justified.

7

. . . .

If any of the following is true, the defendant's use of force was not justified:

1. The defendant initially provoked the use of force against himself, intending to use it as an excuse to injure [Walker].

2. The defendant initially provoked the use of force against himself by his unlawful acts unless:

a. [Walker] used force grossly disproportionate to the defendant's provocation, and it was so great the defendant reasonably believed he was in imminent danger of death or serious injury, or

b. The defendant withdrew from physical contact with [Walker] and clearly indicated to [Walker] that he desired to terminate the conflict but [Walker] continued or resumed the use of force.

. . . .

If you find the defendant knew, or had reason to believe, any of the following at the time he used deadly force, you must presume the defendant reasonably believed that deadly force was necessary to avoid injury or risk to his or another's life or safety:

1. [Walker] was unlawfully entering the defendant's dwelling by force.

Yet if you find the following was also true at the time the defendant used deadly force, you need not presume that the defendant reasonably believed deadly force was necessary to avoid injury or risk his or another's life or safety:

1. The defendant was engaged in Disorderly Conduct . . . .

Teslik asserts that his use of the racial slur did not qualify as an abusive epithet that he knew or should have known would "likely provoke a violent reaction" from Walker and that the word is not necessarily a "fighting word" unprotected by the First Amendment. *See* Iowa Code § 723.4(1)(c); U.S. Const. amend. I; *State v. Fratzke*, 446 N.W.2d 781, 784 (Iowa 1989) ("'Fighting words' are those personally abusive epithets which 'by their very utterance inflict injury or tend to incite an immediate breach of the peace'" (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942))). "[S]o long as a lawful purpose for the communication exists, no language short of 'fighting words' may serve to defeat or criminalize the sender's message." *Id.* at 785.

8

Teslik asserts that he did not know or foresee that Walker would react violently after usage of the word, as he had used the word previously and it had not resulted in a violent reaction from Walker. He testified that when he used the word in prior encounters with Walker, it had caused her to leave the situation, and he thought if he used it again, he would achieve the same outcome. Teslik claims that because he did not know nor foresee a violent reaction from Walker after he used the word, the evidence is insufficient to prove he committed disorderly conduct, precluding his duty to retreat under Iowa law. *See* Iowa Code §§ 704.1(3), 723.4(1)(c).

Regarding whether this word qualifies as a fighting word, "courts are required to carefully consider the actual circumstances surrounding such expression, asking whether the expression 'is directed to inciting or producing imminent lawless action.'" *Fratzke*, 446 N.W.2d at 784 (citation omitted). "States are free to prohibit the use of 'fighting words.'" *Id.* The record demonstrates the turbulent history between Teslik and Walker and that Teslik, when using the word, did so with heightened voice, fierceness, and in combination with other expletives. *See id.*

Contrary to Teslik's testimony, while his previous use of the word caused Walker to abandon a confrontation, it so affected a bystander that they inserted themselves to admonish Teslik for using the word. *Cf. State v. Guy*, No. 23-0257, 2024 WL 3291807, at *6 (Iowa Ct. App. July 3, 2024) (noting the factfinder is within its province in rejecting a defendant's self-serving statements). Indeed, in the moments before the incident, Walker accused Chavez of racism and Chavez responded by stating she never used "that word." Within the context of Walker,

9

Teslik, and Chavez's relationship and the fraught history of the word itself,[3] its usage here demonstrates that "by [its] very utterance [it] inflict[s] injury or tend[s] to incite an immediate breach of the peace." *Fratzke*, 446 N.W.2d at 784 (citation omitted).

We next turn to the sufficiency challenge. Relating to Teslik's conviction for disorderly conduct, we find there was substantial evidence for a reasonable factfinder to determine Teslik "knew or reasonably should have known" his usage of the word was "likely to provoke a violent reaction." *See* Iowa Code § 723.4(1)(c); *see Kieffer*, 17 N.W.3d at 655. As discussed above, the context and history of Teslik and Walker's interactions showed that Walker was violent toward both Teslik and Chavez. While there is no evidence that Teslik responded physically to Walker until the incident in question, the jury could infer that Teslik disliked or feared Walker to the point where he directed to her a commonly known racial slur meant to provoke. *See State v. Schooley*, 13 N.W.3d 608, 616 (Iowa 2024) ("Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence, and credit other evidence" (alteration in original) (citation omitted)).

As for Teslik's claim that he only used the word to diffuse the situation based on prior experience, the jury was within its discretion to reject this assertion based on substantial evidence to the contrary. *See id.* It is certainly within the jury's

---

[3] The N-word "is now probably the most offensive word in English." Randall L. Kennedy, *The David C. Baum Lecture: "Nigger!" As a Problem in the Law*, 2001 U. Ill. L. Rev. 935 (2001) (quoting Random House Webster's Dictionary 894 (2d rev. & updated ed. 2000)). "Wielded with malevolence, any of these terms can be devastating weapons that harm individuals." *Id.*

province to determine from the evidence that Teslik reasonably knew or should have known that using this particular word could incite a violent response. *See id.*

Viewing the evidence in a light favorable to the State, we find there was substantial evidence for the jury to find Teslik guilty of disorderly conduct, which invoked a duty to retreat. *See* Iowa Code §§ 723.4(1)(c), 704.1(3).

We also find there was substantial evidence to convict Teslik of voluntary manslaughter. Teslik was engaged in criminal activity, disorderly conduct, so he had a duty to retreat from the confrontation, which precluded his justification defense. *See* Iowa Code § 704.1(3). A reasonable jury could find that Teslik failed to retreat and caused Walker's death. *See Schooley*, 13 N.W.3d at 616. The jury could also infer that Teslik's actions were "done solely by reason of sudden, violent and irresistible passion resulting from serious provocation" when considering Walker knocked Chavez to the ground and proceeded to punch Teslik after Teslik shouted, "Shut the fuck up you fucking [N-word]." The jury was free to reach these conclusions based on the evidence. *See Schooley*, 13 N.W.3d at 616.

III.    **Conclusion**

Based on the analysis above, we affirm the convictions.

**AFFIRMED.**

11