COURT OF APPEALS OF VIRGINIA

Present:  Judges Elder, Lemons and Senior Judge Cole
Argued at Richmond, Virginia


DERRICK O. RAMSEY

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 2958-98-2           JUDGE LARRY G. ELDER
                                       OCTOBER 19, 1999
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
                    James F. D'Alton, Jr., Judge

            Brad P. Butterworth (Butterworth & Waymack,
            on brief), for appellant.

            Shelly R. James, Assistant Attorney General
            (Mark L. Earley, Attorney General; Ruth M.
            McKeaney, Assistant Attorney General, on
            brief), for appellee.


     Derrick O. Ramsey (appellant) appeals from his bench trial

conviction for distribution of cocaine pursuant to Code

§ 18.2-248.[1]  On appeal, he contends the evidence was

insufficient to prove he distributed cocaine or possessed it

with an intent to distribute.  We agree, and we reverse his

conviction and remand for conviction and sentencing on the

lesser offense of possession of cocaine.

_____

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

     [1] Appellant also was convicted for possession of marijuana
pursuant to Code § 18.2-250.1.  He does not challenge that
conviction on appeal.

## FACTS

On February 25, 1998, Detective Michael Whittington met with a confidential informant, searched him and gave him a marked twenty-dollar bill.  At about 7:15 p.m., the informant proceeded to 614 Victoria Street, Apartment 57.  Whittington saw the informant go to the door of Apartment 57 but did not see whether he entered it.  When the informant returned about ten minutes later, he gave Whittington "[s]uspected crack cocaine in a plastic bag."  Whittington again searched the informant and did not find the marked twenty-dollar bill.  With this information, Whittington sought and obtained a search warrant for Apartment 57.

At about 3:36 a.m., Whittington and other officers arrived at the apartment to execute the warrant and discovered the door had been barricaded with two foot lockers.  In a back bedroom, Whittington found Shatisha Monroe, appellant's girlfriend, on the right side of the bed; appellant, dressed only in shorts or sweatpants, was "hanging out the [bedroom] window."  Police later learned that appellant was "a fugitive from Petersburg."

On the headboard on the left side of the bed, the officers saw in plain view two clear plastic baggies, one containing five rocks of crack cocaine totaling 1.094 grams and the other containing 3.4 grams of marijuana.  Appellant said the cocaine and marijuana were his and that Monroe "didn't have anything to

-

do with it."  In a closet in the bedroom, the officers found a man's black leather jacket in a size that would have fit appellant.  In the pocket of the jacket, they found $313 in five-, ten- and twenty-dollar bills.  Among the bills was the marked twenty-dollar bill Whittington had given to the informant several hours earlier.  From the dresser in the bedroom, the officers seized two functional electronic pagers and a Sears credit card bearing appellant's name.  The credit card had expired in 1996 and had never been signed by appellant.  Current bills on the dresser bore only Monroe's name.  In the kitchen, the officers found a small electronic scale with powder residue on it and "boxes of . . . sandwich bags that had the corners cut off of them."  Whittington testified that the scale and baggie corners were indicative of drug distribution.

The officers found a child and Monroe's brother, a young male juvenile, asleep in a second bedroom.

Appellant offered evidence that Monroe lived in the apartment with Monroe's and appellant's four-year-old son and Monroe's two brothers, ages sixteen and eighteen.  Monroe's son and one of her brothers occupied the other bedroom, and the other brother slept on the couch.  Monroe testified that appellant did not live there.  On February 25, appellant paged her, said he needed to talk to her because he was going to turn himself in, and arrived at her apartment at about 1:00 or 1:30 a.m.  Monroe said that the black jacket belonged to her

-

brother, Orlando, who "used to stay with [her] sometimes," and that the money in the jacket, which totaled no more than $290, belonged to her.  She said the credit card in appellant's name was one appellant gave to her so that she could get things for their child.  She kept the card in her room on the mirror and had never used it.

Appellant took the stand and testified that he and Monroe were in the bedroom with the television on.  He heard banging at the front door but never heard the police identify themselves, and said he was merely looking out the window to see who was there.  He admitted he was a convicted felon but denied knowing the drugs were in the room and denied being in the apartment or selling drugs from the apartment earlier in the day.  Appellant claimed he never admitted the drugs were his and asked Whittington to charge him rather than Monroe with the drug offense because he was concerned about what would happen to his son if Monroe was arrested.  He denied owning the jacket in which the marked bill was found.  His testimony about the other events of that night roughly paralleled Monroe's.

II.

ANALYSIS

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.  See Martin v. Commonwealth, 4 Va. App. 438, 443, 358

-

S.E.2d 415, 418 (1987). In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt. See Speight v. Commonwealth, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1987) (en banc).

Appellant was convicted for violating Code § 18.2-248, which provides that "it shall be unlawful for any person to manufacture, sell, give, distribute, or possess with intent to manufacture, sell, give or distribute a controlled substance or an imitation controlled substance." Any element of a crime--such as distribution or intent to distribute--may be proved by circumstantial evidence. See, e.g., Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988). Such evidence "is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983).

Here, the evidence, viewed in the light most favorable to the Commonwealth, establishes that appellant constructively possessed the cocaine found on the headboard in the master bedroom, for he admitted to Detective Whittington that the cocaine was his. However, assuming without deciding that the evidence also is sufficient to establish that the informant

-

purchased cocaine in Apartment 57 at 7:15 p.m. on February 25,[2] insufficient evidence links appellant to that sale or establishes that he intended to distribute the cocaine in his possession. The evidence establishes, at best, that appellant was present in the apartment with cocaine in his possession at least five hours after the sale. Even if the trial court rejected the testimony of appellant and Monroe and concluded that appellant was lying to conceal his guilt, such a conclusion does not constitute affirmative evidence of guilt, and the remaining evidence was insufficient to exclude all reasonable hypotheses of appellant's innocence.

No evidence proved that appellant owned or constructively possessed the coat, its contents or the items found in the kitchen. The mere presence of the baggies and scales in the kitchen and the marked twenty-dollar bill in the coat in the bedroom closet while appellant possessed the cocaine in plain view in the bedroom does not exclude the reasonable hypothesis that the paraphernalia and the coat containing the marked bill belonged to someone other than appellant. First, both Monroe and Monroe's teenaged brother were present in the apartment when the police executed the warrant. Second, the only items in the bedroom linking appellant to the premises did not exclude the

_____

[2] The record contains no indication that the substance was ever tested and no evidence explaining Whittington's basis for suspecting the substance was crack cocaine. The informant did not testify.

-

reasonable hypothesis that he did not reside there and arrived, as he and Monroe testified, only after the sale of cocaine had occurred at least five hours earlier.  Other than his presence, the only evidence affirmatively linking appellant to the premises was a credit card in his name which had expired over a year earlier and had never been signed by him.  No evidence established that he kept clothes, important papers or other personal possessions there, and all recent bills were in Monroe's name.

Third, evidence that the front door of the apartment had been barricaded with footlockers and that appellant may have attempted to flee through the bedroom window when the police entered also does not exclude all reasonable hypotheses of innocence.  Although attempted flight is a circumstance which may be probative of guilt, see, e.g., Hope v. Commonwealth, 10 Va. App. 381, 386, 392 S.E.2d 830, 833 (1990) (en banc), it had little probative value in this case; the evidence here establishes that appellant both was guilty of possessing cocaine and marijuana and was a fugitive wanted by the Petersburg police, so any attempt at flight could reasonably have been related to one of these offenses and not to any fear of being apprehended for distributing or intending to distribute cocaine. Finally, the Commonwealth offered no evidence that the quantity of cocaine appellant possessed was consistent with distribution and inconsistent with personal use.  Therefore, although the

-

evidence established that appellant possessed the cocaine, it failed to exclude all reasonable hypotheses of appellant's innocence on the distribution or intent to distribute charge.

For these reasons, we hold the evidence was insufficient to support appellant's conviction for distributing cocaine or possessing it with the intent to distribute pursuant to Code § 18.2-248. Therefore, pursuant to appellant's request, we reverse his conviction and remand to the trial court for conviction and sentencing for the lesser offense of possession of cocaine. See Fierst v. Commonwealth, 210 Va. 757, 762-63, 173 S.E.2d 807, 812 (1970) (reversing bench trial conviction for "possession of more than 25 grains of illegally acquired narcotic drugs" and remanding for "new sentencing" for possessing no more than 25 grains).

Reversed and remanded.